# UNITED STATES *v.* BUFFALO PITTS COMPANY.

**ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.**

No. 369.　Submitted May 5, 1914.—Decided June 8, 1914.

In cases brought under the Tucker Act and coming to this court from a District or Circuit Court the findings of fact of the trial court are conclusive, and the question here, unless the record would warrant the conclusion that the ultimate facts are not supported by any evidence whatever, is whether the conclusions of law are warranted by the facts found. *Chase* v. *United States*, 155 U. S. 489.

Where property is left with the officer of the Government who has charge of the work by the owner relying upon the fact that his title is not disputed and upon representations made to him that payment would be recommended for such use, and Congress has given authority to appropriate property necessary for the particular work and to pay therefor, there is an implied contract on the part of the Government to pay for the property and jurisdiction exists under the Tucker Act. *United States* v. *Lynah*, 188 U. S. 445, followed, and *Harley* v. *United States*, 198 U. S. 229, distinguished.

When in the exercise of its governmental rights it takes property, the ownership of which it concedes to be in an individual, the United States, under the constitutional obligation of the Fifth Amendment, impliedly promises to pay therefor. *United States* v. *Lynah*, 188 U. S. 445, 464, followed. *Hooe* v. *United States*, 218 U. S. 322, distinguished.

193 Fed. Rep. 905, affirmed.

THE facts, which involve the liability of the Government under the Fifth Amendment for the rental value of property used by it, are stated in the opinion.

*Mr. Assistant Attorney General Underwood* for the United States:

The plaintiff had no such title to the engine as would enable it to contract for its use.

There was no intention to make a contract for the use of

said engine, nor conduct of the parties from which such contract might be implied.

It was not shown that there was any fund out of which judgment might be legally paid.

The engine having been taken under a claim of right, and not in recognition of a paramount title in plaintiff, no action upon an implied contract will lie. *Gibbons* v. *United States,* 8 Wall. 269, 275; *Harley* v. *United States,* 198 U. S. 229; *Hill* v. *United States,* 149 U. S. 593, 598; *Hooe* v. *United States,* 218 U. S. 322; *Knapp* v. *United States,* 46 Ct. Cls. 601, 643; *Langford* v. *United States,* 101 U. S. 341.

*Mr. Edward P. White* for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This suit was brought by the Buffalo Pitts Company in the Circuit Court of the United States for the Western District of New York to recover for the value of the use of a certain engine which it was alleged the United States was under an implied contract to pay. The action was begun under the Tucker Act of March 3, 1887, c. 359, 24 Stat. 505, and the court of original jurisdiction, as required by the statute, § 7, made findings of fact and conclusions of law under which it held the Government liable and rendered judgment for the plaintiff's claim. On writ of error the Circuit Court of Appeals affirmed that judgment (193 Fed. Rep. 905), and the case is brought here.

The findings of fact show that: The plaintiff is a corporation organized under the laws of New York and having its principal place of business at Buffalo, New York, manufacturing, among other things, traction engines. On May 20, 1905, it sold a traction engine with appurtenances to the Taylor-Moore Construction Company, delivered

at Roswell, New Mexico, and took a chattel mortgage thereon to secure the payment of $1600 of the purchase price. The chattel mortgage conveyed the engine and appurtenances to the plaintiff on condition that if the mortgagor should fail to pay the sum of $1600 according to certain notes or should attempt to dispose of or injure the property or remove the same from the County of Chaves, New Mexico, or if the mortgagor should not take proper care of the property, or if the mortgagee should at any time deem itself unsafe or insecure, then the whole amount unpaid should be considered immediately due and payable and it should be lawful for the mortgagee to take the property and remove the same and hold or sell it and all equity of redemption at public auction with notice as provided by law. The mortgage was duly recorded May 22, 1905, and no part of the money thereby secured has ever been paid to the mortgagee which has ever since been the owner and holder of the mortgage. The engine was put to work by the Construction Company upon the so-called Hondo Project, being part of the Reclamation Service undertaken by the Department of the Interior of the United States, which work was being prosecuted under a contract between the United States and the Construction Company, the engine being located at or near Roswell, New Mexico.

The Construction Company having made default in the performance of its contract, on or about June 7, 1905, work was suspended thereunder and the Construction Company then assigned all its interest in the contract to the United States, which, pursuant to the contract, took possession of all material, supplies and equipment belonging to the Construction Company, including the engine and appurtenances. On June 16, 1905, at Roswell, New Mexico, the plaintiff by its agents made a demand upon the defendant through Wendell M. Reed, District Engineer of the Reclamation Service under the Department of the Interior,

for the possession of the engine and appurtenances, which the defendant then and there refused, and thereafter it retained and used the property in the work under the contract until June 21, 1906. Reed was during, and before and after, such period, the local representative of the Government in charge of the work under the contract at and near Roswell, and as such took possession of the engine and appurtenances for the United States. Thereafter the defendant by the Director of the United States Geological Survey to whom the Secretary of the Interior referred the matter, and by the Chief Engineer and Assistant Chief Engineer of the Reclamation Service under the direction of the Department, ratified and adopted the acts of Reed in respect to the possession of the engine and appurtenances. The mortgagor has never made any claim to the property since the suspension and assignment of the contract to the defendant.

Plaintiff, on or about June 16, 1905, and also on or about September 30, 1905, notified the defendant of the execution and filing of the chattel mortgage and that the plaintiff claimed the property under the title thereby vested in it and claimed the right of possession because of the default by the mortgagor in the conditions thereof, and the defendant at all times well knew of the existence and filing of the chattel mortgage and did not at any time dispute the validity thereof. On September 30, 1905, the defendant represented to the plaintiff that it was using and would continue to use the engine and appurtenances in its work and that any legal proceedings to recover the possession thereof would be resisted by the defendant, and further represented to the plaintiff that if such property was left in the defendant's possession its attorney would recommend payment therefor. The plaintiff relied upon the fact that its title to the property under the chattel mortgage was not disputed by the defendant and upon the representations made to it as aforesaid and consented

to defendant's retaining possession of the property in expectation of receiving due compensation therefor.

The question in this case is, Did these facts warrant the deduction that the Government was liable upon an implied contract to pay for the use of the engine? In cases brought under this act coming up from a District or Circuit Court of the United States the findings of fact of the trial court are conclusive, and the question is whether the conclusions of law were warranted by the facts found (*Chase* v. *United States*, 155 U. S. 489, 500). Exceptions to the rule may exist if the record enables the court to conclude that the ultimate facts found are not supported by any evidence whatever (*Collier* v. *United States*, 173 U. S. 79).

We think the Circuit Court and the Circuit Court of Appeals were right in concluding that under the facts found the United States was liable upon an implied contract. As to the plaintiff, it is specifically found that it left the property with the defendant, relying upon the fact that its title to the property under the mortgage was not disputed and upon the representations made to it, and consented to the defendant's retaining possession of the property in expectation of receiving compensation for it; as to the Government it is found that it was well known to it that the chattel mortgage existed and its validity was undisputed, and that it would continue the use of the engine and appurtenances, and if left in its possession payment would be recommended for such use.

True it is that under the Tucker Act there is no jurisdiction in the Court of Claims or District Courts of the United States to recover for acts merely tortious, the statute providing that there shall be no recovery except in cases not sounding in tort. It was said in a case cited for the Government, *Harley* v. *United States*, 198 U. S. 229, that there must be some meeting of the minds of the parties upon the fact that compensation will be made. In

that case it was found that there was no demand based upon a convention between the parties or coming together of minds, for while the plaintiff, an employé of the Government in the Bureau of Printing and Engraving, supposed and understood he would be entitled to compensation for certain improvements made in printing presses which were used for many years by the Bureau, the findings also set forth in express terms that it was supposed and understood by the officers of the Government that the claimant would neither expect nor demand remuneration, and this fact, said this court, distinguished it from *McKeever* v. *United States,* 14 Ct. Cl. 396, affirmed by this court; also from *United States* v. *Lynah,* 188 U. S. 445, and the other cases cited by appellant.

In the present case, as we have said, there is nothing to show that the Government expected to use the engine and appurtenances without compensation. It did not dispute the mortgage, and the findings of fact clearly show that if the Government had the right to take the property, notwithstanding the mortgage interest which the plaintiff had in it, it made no claim of right to take and use it without compensation as against the prior outstanding mortgage, which distinctly reserved the right to take and sell the property under the circumstances shown and which after the breach of condition vested the right of possession and the right to convert the property in the mortgagee. *Kitchen* v. *Schuster,* 14 New Mex. 164.

Furthermore, the Government was authorized by § 7 of the act of June 17, 1902, c. 1093, 32 Stat. 388, under which this improvement was being made to acquire any property necessary for the purpose and if need be to appropriate it. It may be said, as contended, that under the contract with the Construction Company the Government had a right to take possession of this engine which was in possession of the Company as mortgagor and by virtue of the terms of the agreement complete the work, but it could not in this

manner extinguish the rights of the mortgagee, nor did it undertake to do so. Under such circumstances we think the former decisions of this court, recognizing the general principles of justice which give rise to implied obligations, and enforcing the right of compensation when private property is taken for a public use, require the Government to make compensation for the use of this engine, and that the facts bring this case within *United States* v. *Great Falls Mfg. Co.*, 112 U. S. 645, and *United States* v. *Lynah, supra.* In the latter case, where it was sought to recover damages for the alleged taking of the plaintiff's property in the construction of a dam which had the effect to overflow lands belonging to him and destroy their value, after an extended review of the previous cases in this court, it was said (p. 464):

"The rule deducible from these cases is that when the government appropriates property which it does not claim as its own it does so under an implied contract that it will pay the value of the property it so appropriates. It is earnestly contended in argument that the government had a right to appropriate this property. This may be conceded, but there is a vast difference between a proprietary and a governmental right. When the government owns property, or claims to own it, it deals with it as owner and by virtue of its ownership, and if an officer of the government takes possession of property under the claim that it belongs to the government (when in fact it does not) that may well be considered a tortious act on his part, for there can be no implication of an intent on the part of the government to pay for that which it claims to own. Very different from this proprietary right of the government in respect to property which it owns is its governmental right to appropriate the property of individuals. All private property is held subject to the necessities of government. The right of eminent domain underlies all such rights of property. The government may take personal or real

property whenever its necessities or the exigencies of the occasion demand.  So the contention that the government had a paramount right to appropriate this property may be conceded, but the Constitution in the Fifth Amendment guarantees that when this governmental right of appropriation—this asserted paramount right—is exercised it shall be attended by compensation."

(P. 465) " . . . Whenever in the exercise of its governmental rights it takes property, the ownership of which it concedes to be in an individual, it impliedly promises to pay therefor.  Such is the import of the cases cited as well as of many others."

In *Hooe* v. *United States*, 218 U. S. 322, the attempt to make the Government liable for rent was in the face of a statute of the United States which provided that no contract should be made for rent until an appropriation for that purpose had been made by Congress.  In the present case the Government had the right to contract for this work under statutory authority and to acquire property necessary to that end.  Under the contract it might take possession of the Construction Company's property, and, it may be conceded, finish the contract with such property, but it had no right to use the property of others without compensation, and in this case it did not assume to do so. The mortgagee had a distinct right in the property which had accrued to it before the property was entered upon, and was authorized to take and hold the same as against the attempted transfer of the mortgagor.  While the Government claimed the right to thus take and use the property, it nevertheless held it without denying the right of the owner to compensation.  When it takes property under such circumstances for an authorized governmental use it impliedly promises to pay therefor.  This accords with the principles declared in the previous cases in this court and arises because of the constitutional obligation embodied in the Fifth Amendment to the Constitution of the United

States, guaranteeing the owner of property against its appropriation for a governmental use without compensation.

We find no error in the judgment of the Circuit Court of Appeals, and it is

*Affirmed.*