## BALL ENGINEERING COMPANY *v.* J. G. WHITE & COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 227. Argued March 13, 1919.—Decided May 19, 1919.

A provision in a construction contract that in case of annulment "the United States all have the right to take possession of, wherever they may be, and to retain all materials, tools, buildings, tramways, cars, etc., or any part or parts of same prepared for use or in use in the prosecution of the work, . . . under purchase, at a valuation to be determined by the Engineer Officer in charge," *held* not applicable, *in invitum,* to property belonging to, and which had been used in the construction by, a third party. P. 54.

Upon annulment of a construction contract, the Government retained certain property, on the site, which belonged to a third party who had been doing the work, and, with knowledge of his claim and without his consent, valued it, credited the defaulting contractor accordingly, and leased or disposed of it to a new contractor, at the latter's request, for the completion of the work, upon the understanding that the United States did not undertake to transfer title, nor guarantee peaceable possession, etc., and would not be responsible for the expense or cost of any action against the new contractor nor subject itself to any claim on account of the seizure. *Held,* that no contractual liability could be implied against the United

States, and that the new contractor, having so taken and used the property, was liable to its owner for the conversion.  *Id.  United States* v. *Buffalo Pitts Co.*, 234 U. S. 228, distinguished
241 Fed. Rep. 989, reversed.

THE case is stated in the opinion.

*Mr. William M. Parke* and *Mr. Charles D. Lockwood,* with whom *Mr. Homer S. Cummings* and *Mr. S: L. Swarts* were on the brief, for petitioner:

The taking of the plaintiff's property by the officers of the United States was not a taking under eminent domain, but a proprietary taking under a doctrine of private law which did not in any way rest upon the rights of the Government as sovereign and which, if correct in theory, would have been equally available to any private citizen under similar circumstances.

Since the taking was tortious, the plaintiff cannot recover the value from the Government.  No title can be acquired by a tortious taking.

Neither the plaintiff nor its predecessor in title ever entered into any contractual relation which had the effect of bringing their property within the operation of the Government's contract with the Hubbard Building & Realty Company, and therefore, no matter what construction be placed upon paragraph 33 of that contract it could not affect the plaintiff's title to the property.

A right to "purchase" plaintiff's property could not be exercised by seizing it and making payment to the Hubbard Building & Realty Company.

The Government, in purporting to exercise its alleged rights under paragraph 33, attempted to retain the plant under lease.  Since paragraph 33 did not permit the Government to retain property under lease but only to retain it under purchase, such an effort to lease was wholly nugatory and did not vest any title, interest or right to possession in the Government.

*Mr. Harry W. Reynolds* and *Mr. J. Kemp Bartlett,* with whom *Mr. Lewis Sperry* was on the brief, for respondent:

The taking of the property by the officers of the United States was a valid exercise of the power of eminent domain. Act March 3, 1905, 33 Stat. 1131; Act of April 24, 1888, 25 Stat. 94; *United States* v. *Certain Lands in Narragansett,* 145 Fed. Rep. 654, 657; *Houck* v. *United States,* 201 Fed. Rep. 867; *United States* v. *Buffalo Pitts Co.,* 234 U. S. 228; *United States* v. *Société Anonyme &c.,* 224 U. S. 309; *United States* v. *Lynah,* 188 U. S. 445; *United States* v. *Great Falls Mfg. Co.,* 112 U. S. 645; *s. c.* 124 U. S. 581.

In all these cases, as well as in the case at bar, the Government took property or rights that were needed by it in the making of public improvements or in furtherance of public welfare, but to which it asserted no title vested in the Government prior to the taking. The government engineers made no claim that the property in question had become the Government's property. They asserted that under the terms of the contract the Government had the right to retain and use it in the completion of the work and also to purchase it at a price to be determined by the engineer officer in charge, but the purchase was a mere incident, the important fact being the retention for use in completing the work, of the property involved.

The United States had the right under the specifications to hold and use the property in the completion of the work, and therefore the use by the respondent was not tortious and does not render the respondent liable to the petitioner for a conversion.

The petitioner can succeed solely upon the strength of its own title and its right, if it had any, to the possession of the property in June or July, 1910. That the petitioner was not in either actual or constructive possession of the property at that time or for a long time prior thereto is clearly established. Section 33 of the specifications

is carefully worded so as to include all the buildings, materials, machinery, etc., or any part or parts of same "prepared for use or in use in the prosecution of the work," whether the property of the contractor or otherwise. The only limitation is to be found in the words "prepared for use or in use in the prosecution of the work." The buildings, plant and materials assembled upon the work and used by Mr. Ball and his firm were "prepared for use" and were "used in the prosecution of the work."

If the important right reserved to the Government by the contract and which, as section 33 shows, is reserved in "the form of contract in use by the Engineer Department of the Army," can be lost by an arrangement between the nominal contractor and the contractor who actually does the work, by which the one doing the work is allowed to do it in the name and in the place and stead of the nominal contractor, the consequence will be serious, not alone to the Government, but also to all contractors who are in competition for public work with any who may contemplate the creation of a situation that will enable them to play fast and loose with the Government; that is to continue with the work only so long as it is profitable, and withdraw from it with their buildings, plant and materials when it ceases to be advantageous to them to continue. Mr. Ball had actual, or certainly constructive, notice of the provisions of the section at the time when the property was brought to the site. Among other cases involving similar clauses in construction contracts, see: *Tinker & Scott* v. *U. S. Fidelity & Guaranty Co.*, 169 Fed. Rep. 211; *Duplan Silk Co.* v. *Spencer*, 115 Fed. Rep. 689; *Hart* v. *Porthgain Harbour Co.* [1903], 1 L. R. Ch. Div. 690, 696.

The provisions contained in section 33 of the specifications were inserted in the interest of the United States as a security and guarantee that the work would be performed to its completion, and as a protection against loss in the

event of abandonment of the work by the contractor or anyone standing in the contractor's shoes.

It would be imposing a great hardship upon the respondent, to compel it to pay a second time for the material, and an exorbitant sum, in addition to the rental already paid by it to the Government, for the buildings and plant that the Government authorized it to use.

*The Solicitor General,* by leave of court, filed a brief on behalf of the United States as *amicus curiæ:*

Where the case is not founded on the Constitution of the United States or a law thereof, or a regulation of an executive department, no recovery can be had if the case be one sounding in tort. *United States* v. *Buffalo Pitts Co.,* 193 Fed. Rep. 905, 908, 909; 234 U. S. 228, 232; *Dooley* v. *United States,* 182 U. S. 222; *United States* v. *Lynah,* 188 U. S. 445, 474; *White & Co.* v. *Ball Engineering Co.,* 223 Fed. Rep. 618, 620; *United States* v. *Emery, Bird, Thayer Realty Co.,* 237 U. S. 28, 32; *Russell* v. *United States,* 182 U. S. 516, 530, 535; *Peabody* v. *United States,* 231 U. S. 530, 539; *Harley* v. *United States,* 198 U. S. 229, 234; *Juragua Iron Co.* v. *United States,* 212 U. S. 297, 309; *Crozier* v. *Krupp,* 224 U. S. 290, 303, 304; *New Orleans-Belize S. S. Co.* v. *United States,* 239 U. S. 202, 206, 207; *Tempel* v. *United States,* 248 U. S. 121.

The claim of the Ball Engineering Company against the United States, if any, does not arise under the Constitution, and, therefore, necessarily is a case sounding in tort. *Peabody* v. *United States,* 231 U. S. 538, 539.

MR. JUSTICE DAY delivered the opinion of the court.

The Ball Engineering Company, a Missouri corporation, brought this action against J. G. White & Company, Inc., a Connecticut corporation, in the United States District Court for the District of Connecticut, for damages for

the alleged conversion of a contractor's plant and equip-
ment, which was prepared for use in prosecuting the work
of constructing lock and dam No. 6, on the Trinity River,
in the State of Texas, and all of which, including buildings,
were located upon the site of the lock and dam at the time
of the alleged conversion. The action was tried before a
referee, designated under the Connecticut practice a
Committee. Two trials were had, the first resulting in a
judgment in favor of the plaintiff for the value of the con-
verted property. 212 Fed. Rep. 1009. That judgment
was reversed by the Circuit Court of Appeals (223 Fed.
Rep. 618), and a new trial ordered which took place before
the same Committee, and upon the same evidence and the
same findings of fact, in order to conform to the decision
of the Circuit Court of Appeals, judgment was rendered
in favor of the defendant, and this was affirmed by the
Circuit Court of Appeals on the authority of its prior
decision. 241 Fed. Rep. 989. The case is here upon writ
of certiorari.

The United States filed its brief *amicus curiæ*, contend-
ing that the decision of the Circuit Court of Appeals to
the effect that the United States is liable under the Tucker
Act when property of a third person is taken by one of its
agents, under the circumstances disclosed, was erroneous.

The material facts are:

On July 10, 1906, the United States entered into a
contract with the Hubbard Building & Realty Company
to construct lock and dam No. 6 on the Trinity River,
Texas.

A partnership composed of George A. Carden and P. D.
C. Ball, known as the Ball Carden Company, in the year
1908 placed a considerable amount of property, consisting
of materials, machinery and tools, on the site of the lock
and dam No. 6, and used them in constructing the lock
and dam until the month of May, 1909.

This partnership was dissolved in April or May, 1909,

and discontinued the work theretofore carried on by it in the construction of the lock and dam. Carden transferred all his interest to Ball, who, under the name of the Ball Engineering Company, continued the work until on or about September 8, 1909.

It does not appear under what circumstances the Ball Carden Company or Ball operating as the Ball Engineering Company undertook the performance of the work.

On September 9, 1909, work upon said lock and dam was abandoned; on October 22, 1909, the Government annulled the contract with the Hubbard Company, pursuant to its provisions.

On April 2, 1910, the Ball Engineering Company was organized under the laws of Missouri, and P. D. C. Ball transferred to it all of the property mentioned in the complaint.

The United States entered into a contract with the defendant J. G. White & Company on June 6, 1910, to complete the construction of the lock and dam. Prior to the making of the contract the defendant attempted, without success, to agree with the Ball Company for the purchase or rental of the personal property, etc., specified in the complaint. On June 22, 1910, the Government notified the defendant that the Hubbard Company had been directed to move all property at lock and dam No. 6, except certain specified items, and determined the valuation of the same at $11,578, and fixed a monthly rental of $380 therefor from the Government to the defendant, and also fixed a valuation upon the material, etc., at the lock-site and notified the defendant to take such of it as it deemed proper, at such valuations respectively. The Ball Company refused to assent to either valuation. On July 18, 1910, the defendant receipted to the United States for the articles constituting the construction plant, and for such of the materials as it was willing to and did receive. The property which the Government took from the

Ball Engineering Company was valued by it at $11,578, which amount was credited on account of the Hubbard Company; but the United States neither paid, nor credited the purchase price or rental of the property to the Ball Company.

The United States professed to act under section 33 of the contract with the Hubbard Company, which reads:

"Annulment.—In case of the annulment of this contract as conditionally provided for in the form of contract adopted and in use by the Engineer Department of the Army, the United States shall have the right to take possession of, wherever they may be, and to retain all materials, tools, buildings, tramways, cars, etc., or any part or parts of same prepared for use or in use in the prosecution of the work, together with any or all leases, rights of way or quarry privileges, under purchase, at a valuation to be determined by the Engineer Officer in charge."

The Government would not allow the Ball Company to take possession of any of the property used in the construction of the lock and dam. This property the United States leased to the defendant, who used the same in completing the work, and thereafter returned all of it to the Government, except, of course, such material as had been used in construction.

The Government inserted the following stipulation in its contract with the J. G. White & Company, Inc., "If so requested in writing by the contractor, the United States will exercise the right conferred by paragraph 33 of the specifications forming part of the annulled contract with the Hubbard Building & Realty Company, to take possession of and retain all materials, tools, buildings, tramways, cars, etc., or any part or parts of the same prepared for use or in use in the prosecution of the work at a valuation to be determined by the Engineer Officer in charge, and the contractor for the completion of the work will be permitted to use such plant and material in the

prosecution of the work, for which he will be charged a fair rental or purchase value, to be determined by the Engineer Officer in charge. It must, however, be clearly understood that since the ownership of the above-mentioned plant and materials is not free from doubt, the United States does not undertake to transfer title, does not guarantee peaceable possession and uninterrupted use, and will not defend any action or writ that may be instituted against the contractor concerning the same nor be responsible for nor assume any expenses or costs in connection therewith. Nothing that may result from the exercise of the above-mentioned right shall be made the basis of a claim against the United States or its officers or agents.".

The Circuit Court of Appeals, under the circumstances here disclosed, rightly held that the Government had no authority to take the property of the Ball Engineering Company by virtue of anything contained in its contract with the Hubbard Company. And further held that inasmuch as the Government took the property with the knowledge that it was claimed by the Ball Company and used it in the construction of public work, it was obliged to make just compensation to the Ball Company by reason of the Fifth Amendment of the Constitution. "It," says the Court of Appeals, "made no proprietary claim, and therefore was bound to pay the real owner for the property, whether the taking was tortious or not. It fully recognized this obligation by crediting the Hubbard Company with the value. The fact that it recognized the wrong person as owner and erroneously relied upon the contract with the Hubbard Company, by which the plaintiff was not bound, in no respect changed the material fact that it had taken the property and acquired title thereto."

The findings show that the Government took possession by virtue of its contract with the Hubbard Company; that it definitely advised White & Company that it would

not be responsible for the seizure of the property, and that anything which might result therefrom could not be the basis for any claim against the United States, its officers or agents.  Under the circumstances disclosed the Circuit Court of Appeals held the White Company not liable to the Ball Engineering Company—upon the theory that the Government had appropriated the property under circumstances giving rise to an implied contract to pay the Ball Engineering Company for it.  This ruling was made upon the authority of *United States* v. *Buffalo Pitts Company*, 193 Fed. Rep. 905, affirmed 234 U. S. 228.  In that case a suit was brought under the Tucker Act by the Buffalo Pitts Company against the United States to recover for the value of the use of a certain engine for which, it was alleged, the United States was under an implied contract to pay.  The findings of fact showed that the Buffalo Pitts Company sold a traction engine -to the Taylor-Moore Construction Company, and took a chattel mortgage to secure the payment of the purchase money. The mortgage was duly recorded, and no part of the purchase money was paid.  The engine was put into service by the Taylor-Moore Company upon a reclamation project undertaken by the Interior Department, the work being prosecuted under a contract between the United States and the Taylor-Moore Construction Company. The Construction Company defaulted in its work, and assigned all of its interest in the contract to the United States, and it took possession of all material, supplies and equipment belonging to the Construction Company, including the engine in question.  The Buffalo Pitts Company made demand upon the District Engineer of the Reclamation Service for the possession of the engine and appurtenances.  But the demand was refused, and the engine retained for use in the Government work.  The Buffalo Pitts Company notified the representative of the United States of the execution and filing of its mortgage,

and claimed the property. It was expressly found that the Government had at all times known of the existence of the mortgage, and did not dispute the validity thereof, but represented to the Buffalo Pitts Company that it was using and would continue to use the engine in its work, that any legal proceedings to recover possession would be resisted, and that if the property were left in the Government's possession its attorney would recommend payment therefor. It was further found that the Buffalo Pitts Company relied upon these facts, and consented to the Government retaining possession of its property—in the expectation of receiving compensation from it therefor. The claim was made that the United States was not liable for tortious acts. This court reviewed former cases, and said: "In the present case, as we have said, there is nothing to show that the Government expected to use the engine and appurtenances without compensation. It did not dispute the mortgage, and the findings of fact clearly show that if the Government had the right to take the property, notwithstanding the mortgage interest which the plaintiff had in it, it made no claim of right to take and use it without compensation as against the prior outstanding mortgage, which distinctly reserved the right to take and sell the property under the circumstances shown and which after the breach of condition vested the right of possession and the right to convert the property in the mortgagee."

It was further pointed out that the Government had authority under an act of Congress to acquire any property necessary for the purpose stated, and, if need be, to appropriate it. We held that the facts found brought the case within the principles decided in former cases and made the United States liable, not for a tortious act, but upon implied contract.

The subject was again reviewed by this court in a case decided at this term, *Tempel* v. *United States*, 248 U. S.

121, in which a suit was brought to recover the value of submerged lands in the Chicago River appropriated by the Government without the owner's consent. Former decisions of this court were reviewed, and we said: "If the plaintiff can recover, it must be upon an implied contract. For, under the Tucker Act, the consent of the United States to be sued is (so far as here material) limited to claims founded 'upon any contract, express or implied'; and a remedy for claims sounding in tort is expressly denied. *Bigby* v. *United States*, 188 U. S. 400; *Hijo* v. *United States*, 194 U. S. 315, 323. As stated in *United States* v. *Lynah*, 188 U. S. 445, 462, 465: 'The law will imply a promise to make the required compensation, where property to which the government asserts no title, is taken, pursuant to an act of Congress, as private property to be applied for public uses'; or in other words: 'Whenever in the exercise of its governmental rights it takes property, the ownership of which it concedes to be in an individual, it impliedly promises to pay therefor.' But in the case at bar, both the pleadings and the facts found preclude the implication of a promise to pay. For the property applied to the public use is not and was not conceded to be in the plaintiff."

In the case under consideration the United States did not concede title in the Ball Engineering Company, but took the property knowing of the claim of that Company to its ownership, and credited its value upon the government contract with the Hubbard Company. The Government took this action upon request of the White Company, and advised that it would not under any circumstances be held liable for the seizure of the property. Under these circumstances, the implication of a contract that the United States would pay, which must be the basis of its liability under the Fifth Amendment, is clearly rebutted. The liability of the Government, if any, is in tort, for which it has not consented to be sued. As the findings show that

the White Company, with knowledge of the facts, procured and used the property of the Ball Company it ought to have been held liable to that Company. It follows that the judgment of the Circuit Court of Appeals must be

*Reversed.*