Campbell, Chief Justice,
delivered the opinion of the court:
The question for decision is whether from the facts there arises the implication- of a contract, by which the Government agreed to pay $5,000, the value of the shovel, as for a taking of the property of plaintiffs for public use.
The law upn the subject is well settled. In a late case the Supreme Court of the United States, in an opinion by Mr. Justice McKenna have said: “It is to be remembered that to bind the Government there must be implication of a contract to pay, but the circumstances may rebut that implication.” John Horstmann Co. case, 257 U., S. 138. And in the Tempel case, 248 U. S. 121, 129, the court, speaking through Mr. Justice Brandéis, say: “If the plaintiff can recover, it must be upon an implied contract. For, under the Tucker Act, the consent of the United States to be sued is (so far as here material) limited to claims founded upon any contract, express or implied; and a remedy for claims sounding in tort is expressly denied.” In Ball Engineering. Co. v. White & Co., 250 U. S. 46, 57, it was held that the facts rebutted the implication of a contract that the Government would pay, which, it is said in that case, must be the basis of its liability. What, then are the facts ? These have been stipulated by the parties, and from this *170 stipulation it appears that the United States entered into what is called a “ cost-plus ” contract with the Bates & Rogers Construction Company (hereinafter called contractor) for work in connection with a storage depot. The Government’s agent is called “ the contracting officer.”
The contractor undertook to furnish the labor, materials, equipment, etc., necessary for the completion of certain work involving sewers, excavation, grading, and subsurface work, according to plans and specifications, and lie was to be paid for the cost of the work, as provided in Article II of the contract. Among other things, he was to be reimbursed for “ rentals actual]3? paid ” by him for “ steam shovels ” at rates not to exceed those mentioned in the schedule of rates, as well as for similar equipment the contractor “ may own and furnish,” at the named scheduled rental rates. Provision is made for the filing by the contractor with the contracting officer of a schedule setting forth the fair valuation of each part of the construction plant upon its arrival at the site, and this valuation was to be deemed final unless the contracting officer seasonably objected to the same. If the total rental paid to the contractor for any article should equal tire valuation thereof, no further rental was payable and title would vest in the United States, and at the completion of the work the contracting officer could, at his option, purchase for the United States any part of the plant then owned by the contractor by paying the difference between its valuation and the rentals that had been paid thereon. In May, 1918, following this contract, the contractor, Bates & Rogers Construction Company, entered into a written agreement — called a lease — with Klebe & Company, the plaintiffs, for the use of a steam shovel at $25.00 per day. This lease contemplated the use of the shovel on the Government’s work. .It stated that the plaintiffs had acquainted themselves with the terms of the contract between the contractor and the United States, and contained a provision to the effect that all of the rights which the Government had under its contract as against property of the contractor should “ apply to and be enforceable against ” the property leased by plaintiffs, “to the end that the United States Government may have and exercise as to and against the said equipment all *171 rights provided for in said paragraph c (of Article II) with respect to ” the contractor’s property, the lessor (the plaintiffs), however, “to he entitled, as owners, to receive any purchase price payments, which upon any appropriation of said equipment by the United States Government under said Article II may be coming from said Government.” The lease stated the valuation of the shovel at $5,000.
The stipulation says: “ The said steam shovel of the claimants was appropriated by the Government as its property under the purchase privilege clause of the contract between the claimants and the Bates & -Rogers Construction Company, and the facts pertaining to said appropriation arc as follows.” Then follows certain correspondence, from which it appears that on October 2, when the work was nearing completion, the contractor notified the contracting officer of the fact, and, stating that at that time about $3,825 in rentals had been paid upon the shovel, inquired whether it was “ the intention of the Government to exercise its purchase privilege.” This notice was forwarded to Washington with his recommendation, and later, on October 17, the contracting officer replied to the inquiry of October 2, that “ acting upon instructions from Washington, we hereby exercise the Government’s purchase privilege and take over said Erie steam shovel B-74 as the property of the United States.” The contractor notified the plaintiffs of this action, and on November 5 they replied to him that their contract did not provide that the Government could take the shovel at an agreed valuation, less rentals paid, and they would look to the contractor “ for the payment of the rental and return of the shovel, as provided for in the contract.” This letter of November 5 was brought to the contracting officer’s attention, and he wrote to plaintiffs, stating: “This is to advise you that the Government has taken over your shovel No. 74, as distinctly provided in the contract.” It should be observed that the facts clearly show that this officer’s “instructions from Washington” were to exercise the Government’s right to purchase the shovel, and that he neither had, nor attempted to exercise, any other right of appropriation by the Government. The record does *172 not disclose that he had any authority .to appropriate the shovel under the Government’s power of eminent domain. At that time the paid rentals amounted to $4,225, and the difference between them and the valuation of the shovel, stated in the lease, is $775. The shovel was shipped to another place by the contractor under instructions from the contracting officer. The stipulation shows that the Government has been ready and willing at all times to pa}' this sum of $775, “ pursuant to the rights which it asserts, under the contract.” The plaintiffs are not suing for this balance, but claim $5,000 as the value of the shovel.
It is unquestionably settled that where the Government takes property for public use, conceding the ownership to be in an individual, it impliedly promises to make just compensation therefor. Great Falls Mfg. Co. case, 112 U. S. 645; Bigby case, 188 U. S. 400, 407; Ball Engineering Co. v. White & Co., 250 U. S. 46, 56; North American Co. case, 253 U. S. 330, 333.
The basis for the enforcement of this liability in the Court of Claims is that the taking, under the circumstances stated, raises an implied contract to pay for the property. Great Falls Mfg. Co. case, 112 U. S. 645, 658; Tempel case, supra; Peabody case, 231 U. S. 530, 539. See also Russell case, 182 U. S. 516, 530; Harley case, 198 U. S. 229, 234; Court of Marion County, 53 C. Cls. 120, 149. As was held in United States v. North American Co., 253 U. S. 330, 335 : “ The right to bring this suit against the United States in the Court of Claims is not founded upon the fifth amendment (Schillinger case, 155 U. S. 163, 168; Basso case, 239 U. S. 602), but upon the existence of an implied contract entered into by the United States.”
It follows that where the circumstances in Avhich the appropriation occurs rebut the implication of a contract there can be no recovery. Ball Engineering Co. v. White & Co., 250 U. S. 46, 57, distinguishing Buffalo Pitts Co. case, 234 U. S. 228; Tempel case, supra; Natron Soda Co. case, 54 C. Cls. 169, affirmed 257 U. S. 138.
Stating some of these rules, it Avas further said in United States v. North American Co., 253 U. S. 330, 333, that in order that the Government shall be liable, it must appear *173 that the officer who has physically taken possession of the property was duly authorized so to do, either directly by Congress or by the official upon whom Congress conferred the power.
We are required to observe the settled distinction between actions ex contractu and those ex delicto, because in the latter the Government has not subjected itself -to suit. Langford case, 101 U. S. 341, 345; Jones case, 131 U. S. 1; Hill case, 149 U. S. 593, 598; Bigby case, 188 U. S. 400, 405.
The property was taken possession of because the Government officer asserted that an express contract gave it the right to purchase by paying the difference between what it had paid as rental, $4,225. and the stated valuation, $5,000. To claim that by the very act of exercising this asserted right- to purchase for $775 the Government made itself liable, upon an implied contract, to pay $5,000 involves a contradiction of terms. It ignores any distinction between express and implied agreements and confuses that class of contracts which grow out of the dealings of parties with the distinct class of implied contracts arising from the exercise of the sovereign right of eminent domain because of the fifth amendment. And this situation is not relieved by characterizing the contract right as an option, requiring actual payment, before the property could be taken in virtue of the contract. The appropriation was itself an exercise of this right of purchase, and the Government’s agents so stated. The contract contemplated that the Government might elect to appropriate the property before making the payment. It provided that the plaintiffs were to be entitled, as owners, to receive any purchase price payments, “ which upon appropriation of said equipment * * * may be coming from said Government.” And it is not to be conceded that under a cost-plus contract, such as was made between the parties, the Government can not avail itself of the right of purchase stipulated for except upon paying in advance for the property involved. It, of course, becomes liable under the terms of purchase.
Under the facts it can not be asserted that the Government’s claim was a mere subterfuge (and as to its interest and claim see Propeller Company case, 14 Wall. 670, 675), *174 but in determining the question here involved as to whether the property was taken under the implied contract, essential to plaintiff’s case, we are not required to pass upon the validity of the Government’s claim of right to the property in question-, because, as was said in the Tempcl case, p. 130: “ It is unnecessary to determine whether this claim of the Government is well founded. The mere fact that the Government then claimed and now claims title in itself, and that it denies title in the plaintiffs, prevents the court from assuming jurisdiction of the controversy.” The Government’s claim of a right of purchase, asserted and acted upon as it clearly was in this instance, negatives a conclusion that the property was taken under the power of eminent domain. “ The law can not imply a promise by the Government to pay for a right over, or interest in, land, which right or interest the Government claimed and claims it possessed before it utilized the same. If the Government’s claim is unfounded, a property right of plaintiff was violated; but the cause of action therefor, if any, is one sounding in tort, and for such the Tucker Act affords no remedy.” Tempel case, supra. See Hill case, 149 U. S. 593, 598; Langford case, 101 U. S. 341.
The plaintiffs rely upon the Buffalo Pitts Co. case, 234 U. S. 228, but, plainly, the facts in that case are different from the facts in the instant case. The rule stated in Ball Engineering Co. v. White & Co., 250 U. S. 46, is applicable here. In the last-named case, Mr. Justice Day, who wrote the opinions in both cases, distinguishes the Buffalo Pitts Go. ease, and from his analysis of the latter (250 U. S. 56) it appears that the Government recognized the claim of the Buffalo Pitts Company as mortgagor to the property in question, and represented that if the property were left in its possession and use, its attorney would recommend payment therefor, and, further, that the company relied on these representations and consented to the Government retaining possession of its property in expectation of receiving compensation therefor. In Ball Engineering Co. v. White & Co., it appeared that the Government had a contract with Hubbard and Company for the construction of a lock and dam, which provided for annulment under certain *175 conditions, and by paragraph 33 provided that in case of annulment the Government would have the right to take the property on the premises at a valuation or rental to be fixed by the officer in charge. The contract was annulled and the work was relet to White & Company. The Ball Engineering Company, whose connection with the work, or the original contract, does not appear, had done some work and assembled some property at the site. This prop-* erty was valued by the officer at $11,578 and had been excepted from the general notice to Hubbard & Company, the contractor, to remove property from the premises preparatory to work by White & Company. It was leased by the United States to White & Company, who used it in completing the work, and then returned all of it to the Government, except, of course, such material as had been used in construction. In its contract with White & Company the Government had agreed to avail itself of the provision of paragraph 33 of the contract with Hubbard & Company, if requested so to do by the new contractor, and upon their request it delivered the property in question to them, but stipulated that it would not be liable therefor or on account thereof. The Ball Engineering Company sued White & Company in the district court for the value of this property, and, upon appeal from the district court, it was held by the Circuit Court of Appeals, 241 Fed. 989, upon authority of the Buffalo Pitts Company case, that White & Company were not liable, the theory of the decision being that the United States had appropriated the property under circumstances which made it liable to pay therefor. When the case reached the Supreme Court, the Government was allowed to file a brief amicus curia, contending that there was no such taking of the property as to render it liable, and that the action of the Ball' Engineering Company sounded in tort. The opinion calls attention to the T'em/pel case, supra, and follows it, with the result that the judgment of the Circuit Court of Appeals was reversed, and White & Gompany (and not the United States) ■ were held to be liable for the property in question. It was declared that under the circumstances stated “the implication of a contract that the United States would pay, which must be *176 the basis of its liability under the fifth amendment, is clearly rebutted. The liability,” it is added, “ of the Government, if any, is in tort, for which it has not consented to be sued ” (p. 57).
In the instant case the facts show that the Government officer took possession of the shovel under what was asserted to be a claim of right to take it, founded upon an express contract, and the circumstances clearly rebut the implication of a promise to pay its fixed valuation.
As already stated, taking the property under an express contract, which created a liability for $-775, is itself sufficient to rebut an implication that it was taken under an implied contract involving a liability for $5,000. See Bogert case, 2 C. Cls. 159, 165.
'Whilst, strictly speaking, the plaintiffs’ petition is framed on a theory that would preclude a recovery of any sum, it makes the contracts part of it, and may, therefore, be held to authorize a judgment for $775, especially in Anew of the stipulation to this effect. This course obviates the necessity for a new petition; but it may be added, however, that the court does not recognize a right' in the parties to stipulate the questions that shall be decided upon the facts when found. They can not by stipulation confer jurisdiction of an action sounding in tort.
Judgment will be rendered in favor of the plaintiff for the sum of $775.
Hay, Judge; Downey, Judge; and Booth, Judge, concur.