## Commonwealth, Appellant, *v.* McFarland-Meade Company et al.

*Replevin—Contracts—Building contracts—Sub-contracts—Materials on ground—Title.*

In an action of replevin for certain building materials it appeared that the owner had entered into an agreement with the contractor, which provided that, in the event of the failure of the latter to carry out the contract, the owner should have the right to "enter upon the premises and take possession for the purpose of completing the work * * * * * all materials, tools and appliances thereon."

The defendant was a sub-contractor for the roofing and sheet metal work, and had consigned to its own order certain materials to be used for such purposes. The contractor, having abandoned the work the sub-contractor sought to recover its property. The owner thereupon replevied the goods, claiming that under the original contract it had the right to all the material on the grounds.

*Held:* That the material consigned by the sub-contractors to themselves and still remaining in the original packages had never become the property of the contractor and did not pass to the owner under the terms of the original contract.

Argued April 24, 1925. Appeal No. 152, April T., 1925, by plaintiff from judgment of C. P. Cambria County, December T., 1916, No. 215, in the case of Commonwealth of Pennsylvania v. F. S. Meade, The McFarland-Meade Company and the Pennsylvania Railroad Company. Before PORTER, HENDERSON, TREXLER, KELLER and GAWTHROP, JJ. Affirmed.

Replevin, for certain building materials. Before REED, P. J. of O. C., specially presiding, without a jury.

The facts are stated in the opinion of the Superior Court.

68    COM., Appel., *v.* McFARLAND-MEADE CO. et al.

Verdict in favor of the defendant in the sum of $1,000.00, with interest. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*Philip N. Shettig,* for appellant.

*Charles S. Evans,* and with him *Francis Chapman,* for appellees.

OPINION BY TREXLER, J., July 9, 1925:

The trial was had before a court without a jury as provided by the Act of April 22, 1874, P. L. 110, and the facts were agreed upon. It appears that Henry L. Brown entered into an agreement with the Pennsylvania State Sanitarium near Cresson to erect a building. Brown entered into the performance of the contract and continued to work until September, 1916, at which time the building still being uncompleted Brown stopped and the commissioner of health notified the director of the sanitarium to take care of the property then upon said ground. The contract between the Commonwealth and Brown contained a provision that upon the termination of the work by the failure of performance on the part of the contractor the Commonwealth through the commissioner of health "shall be at liberty to......terminate the employment of said party.......for said work and to enter upon the premises and take possession for the purpose of completing the work included in this contract, of all materials, tools and appliances thereon," etc. The said Henry L. Brown subcontracted to the McFarland-Meade Company, one of the defendants, the furnishing of all the necessary work and material to do the roofing and sheet metal work required in the job and the material and work were to be furnished subject to all specifications, rules, regulations and conditions in relation to the work which was contained in the contract

between the Commonwealth and Brown. It further appears that in preparation for the performance of its part of the contract McFarland-Meade Company shipped to Cresson, consigned to itself, certain cases of sheet copper and a kit of cement which duly reached Cresson and was hauled by the McFarland-Meade Company to the grounds and placed under a shed provided by Brown for the storage of material. The packages had not been broken and the time had not yet arrived for the use of the material in the construction of the building. The McFarland-Meade Company in October, 1916, caused the materials in the original cases to be removed to the Pennsylvania Railroad and thereupon the Commonwealth replevied the goods claiming that under the agreement referred to above between the Commonwealth and Brown, it had a right to all the material then upon the ground. The lower court found that (a) the Commonwealth had no title to support the suit; (b) that Brown never had title; (c) that McFarland-Meade Company never parted with its title. From this decision of the lower court the Commonwealth has appealed, the only error assigned being the judgment of the court.

Had the Commonwealth under the contract with Brown a right of possession which would support this action? It will be noticed that there is no evidence that this copper and cement had been delivered to Brown. As was stated before it remained in unbroken packages and was consigned to McFarland-Meade Company. In contemplation of the parties to the contract, Brown was not to get the goods. His agreement with McFarland-Meade Company contemplated a completed job; the roofing in place. We do not think that the contract between the State and Brown gave the right to the State to seize and use the tools and property of third parties, certainly not such as were not being used for the erection of the building or in process of consumption as part of the construction. We

start out with the general principle that when a builder is to furnish the materials and labor for the performance of a contract requiring the erection of structures on the land of the owner, the materials remain the property of the builder until they are affixed to the land of the owner or are delivered to and accepted by him as his property. The clause of the contract relied upon by the appellant changes this as to the contractor but makes no allusion to subcontractors. The extreme length it goes would repel the suggestion that it was to apply to all persons. Would anyone argue that the tools of workmen when they happened to be on the premises when the contractor defaulted would pass into the possession of the owner of the premises. Brown was only contracting for himself. He could not bind third parties. The provision in the contract between Brown and the defendants that subcontractors were to be bound by the specifications, rules and regulations and conditions of the main contract had reference to the methods of operation and the progress of the work but can hardly be justly construed as an agreement that all the tools, machinery and materials furnished by the subcontractors shall be held liable for the default of the principal contractor although such subcontractors have consigned the goods to their own order and thus have shown a purpose to retain title and possession. If such were the intention it should have been stated. Before reaching such an inequitable conclusion, we should be compelled to adopt such view only by language clear and unmistakable. We find no Pennsylvania cases directly on the subject. There are a number from other jurisdictions. In the case of Ball Engineering Co. v. White & Co., 250 U. S. 46, the government entered into a contract with a realty company for the construction of a lock and dam. A third party placed a considerable amount of property on the premises to be used in the

construction of the lock and dam.  The original contractor abandoned the contract.  The government annulled its contract and entered into a new contract with P. G. White & Co. to complete the dam and turned over to White & Co. the property of the engineering company which it had used.  The contract between the United States and the original company had a provision almost similar to that which we are considering.  The Supreme Court decided that the government had no authority to take the property of the engineering company.  To the same effect are J. G. White & Co. v. Ball Engineering Co., 298 Fed. Reporter 709; growing out of the same transaction, and Calhoun County v. Art Metal Construction Co., 152 Ala. 607, 44th Southern Reporter 876.  From the last-mentioned case we quote the syllabus: "The contract for the construction of a court house provided that as the material was delivered on the premises to form a part of the work, they were to be the property of the county.  A person not a party to the contract shipped fixtures for the building to his own order, and an agent of the shipper received them and placed them in a room in the building.  Subsequently the contractor failed and abandoned the work.  Held, the county did not acquire title to the fixtures under the contract."  See also Cameron v. Orleans & Jefferson Railway Co., Ltd., 108 La. 83; Rochelle v. Evens, 164 Ill. Appeals 12; Hogan Lumber Co. v. City of Oakland, 25 Cal. Appeals 130.

The assignments of error are overruled and the judgment of the lower court is affirmed.