## UNITED STATES v. GEORGIA MARBLE CO.
### No. 9251.

Circuit Court of Appeals, Fifth Circuit.
Oct. 30, 1939.

Tom DeWolfe, Sp. Asst. to Atty. Gen., and T. Hoyt Davis, U. S. Atty., and T. Reese Watkins, Asst. U. S. Atty., both of Macon, Ga., for the United States.

Wallace Miller and Jas. A. Lowrey, Jr., both of Macon, Ga., and James H. Therrell, of Atlanta, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The Georgia Marble Company brought suit against the United States under the provisions of the Tucker Act, 28 U.S.C.A. § 41(20), Jud.Code Sec. 24(20), for the recovery of the value of 1294 cubic feet of marble taken over and used by the government in the extension and remodeling of the United States Post Office and Court House at Macon, Georgia. The court below made findings of fact and conclusions of law and entered judgment for the Georgia Marble Company.

In 1932 the United States entered into contract with the Concord Construction Company for the remodeling and extension of the Macon Post Office Building. Thereafter the Georgia Marble Company by subcontract with the Concord Construction Company agreed to furnish all materials and set and install the exterior marble called for by the government contract. The marble company agreed to be bound to the construction company by the terms of the agreement, general conditions, draw-

ings, and specifications which were a part of the government's contract with the general contractor.

The Concord Construction Company defaulted and on March 24, 1933, the government notified it that its right to proceed with the work had been terminated. Article 9 of the contract between the government and the construction company provided that in the event of default the government might "take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor."

When the contract was terminated, the Assistant Secretary of the Treasury directed Charles W. Owens, the construction engineer in charge, to take possession of "all tools, materials, etc., belonging to said contractor on the site". Owens thereupon took possession of all materials upon the site including 1294 cubic feet of loose marble belonging to the Georgia Marble Company.

The Supervising Architect in the Treasury Department assigned John L. Maddocks, an assistant architectural engineer, to assist Owens in taking inventory and "to represent the office in any manner required." While inventory was being taken, the marble company notified Maddocks that the loose marble on the site was its property. The company's job superintendent also asked Owens who would pay for the loose marble. He was told that the government would "take care of that later."

On May 15, 1933, the government let a contract for the completion of the project and the loose marble was turned over to the new contractor, H. B. Nelson Construction Company. After this marble was installed in the building the marble company was notified that the matter would be referred to the Comptroller General for settlement and determination of the equities of all parties in interest. The marble company presented its claim to the Comptroller General and was then advised, for the first time, that the United States recognized no obligation to it for the marble taken and used. Thereafter this suit was filed to recover the value of the marble seized and used by the government.

■ The United States contends that the facts fail to show a case within the jurisdiction of the court under the Tucker Act, 28 U.S.C.A. § 41(20), in that no contract to pay the plaintiff could be implied. We cannot agree with this contention. When the government seized the marble, it did not assert right or title to it and has never claimed it as the property of the United States.

■ The government now claims that it had the right under Article 9 of the general contract to seize any material on the site and that its obligation was to account to the general contractor for it. Marble was shipped by the Georgia Marble Company to itself at the work site. Title and control to marble did not pass from the marble company to the general contractor or anyone else until it had been set and installed in the building, and the government had no right to take and use the material without paying for it. United States v. Buffalo Pitts Co., 234 U.S. 228, 34 S.Ct. 840, 58 L. Ed. 1290; Ball Engineering Co. v. J. G. White & Co., 250 U.S. 46, 39 S.Ct. 393, 63 L.Ed. 835; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; United States v. Great Falls Mfg. Co., 112 U.S. 645, 5 S.Ct. 306, 28 L.Ed. 846; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746.

■ If the United States had taken possession of the marble under an asserted right or title and thereby violated the plaintiff's property rights, the cause of action would have been one sounding in tort for which the Tucker Act affords no remedy. Klebe v. United States, 263 U.S. 188, 44 S.Ct. 58, 68 L.Ed. 244; Tempel v. United States, 248 U.S. 121, 130, 39 S.Ct. 56, 63 L.Ed. 162.

■ It is clear in this case that the government recognized that it had no right to take over property not belonging to the general contractor. The trial court properly held that the government intended to take the marble, devote it to a public use, and pay for it. There was an implied contract to pay and the court had jurisdiction under the Tucker Act. United States v. Buffalo Pitts Co., 234 U.S. 228, 34 S.Ct. 840, 58 L.Ed. 1290. The implied promise to pay having arisen, the government cannot by a later claim destroy the plaintiff's right in contract and convert its act into a tort for which the statute affords no remedy. See Tempel v. United States, 248 U.S. 121, 131, 39 S.Ct. 56, 63 L.Ed. 162.

The government further contends that the plaintiff was estopped to assert its claim for the reason that it had recovered judgment against the receiver of the general contractor's surety; and that it had by

that suit made election of a remedy inconsistent with this suit against the United States.

On August 23, 1934, the Comptroller General notified the plaintiff that "there is no contractual obligation on the part of the United States to pay you. * * * Such legal claim as you may have is against the contractor and its surety * * *."

This statement of the Comptroller General was erroneous.

The marble company had previously filed an intervention in State Court receivership proceedings against the surety of the general contractor, and had thereby made claim for the marble actually set in the Post Office Building. After receipt of the Comptroller General's letter, the plaintiff amended its claim to include the value of the marble not installed and which had been taken and used by the government. The amendment fully set out why this amount, $8,087.50, had not been included in the original claim, and recited the fact that the United States had recently refused to pay for this marble. In the State Court suit the plaintiff put all the facts into the record including its contract with the general contractor. It recovered judgment for the full amount of its claim and has since received dividends amounting to thirty five per cent of the claim. After receiving these dividends the plaintiff filed an amendment to this suit and reduced its claim in the amount of thirty five per cent. Furthermore, any amount paid in the future on the State Court judgment will inure to the benefit of the government.

■ There has been no inconsistent election of remedies or shifting from one set of facts to another in this case. Cf. Friederichsen v. Renard, 247 U.S. 207, 213, 38 S.Ct. 450, 62 L.Ed. 1075; United States v. Oregon Lumber Co., 260 U.S. 290, 301, 43 S.Ct. 100, 67 L.Ed. 261; Parkerson v. Borst, 5 Cir., 264 F. 761, 766, 767.

■ The government has not been prejudiced or injured by the action of the plaintiff in making claim against the general contractor's surety. The action of the Georgia Marble Company was largely influenced by the letter of the Comptroller General and the government has not been misled by anything the plaintiff did or failed to do. The government has, in fact, benefited by the plaintiff's action. There

can be no estoppel in such a case. See United States v. Illinois Surety Co., 7 Cir., 226 F. 653; Dickerson v. Colgrove, 100 U.S. 578, 25 L.Ed. 618; Oklahoma v. Texas, 268 U.S. 252, 45 S.Ct. 497, 69 L.Ed. 937.

■ The government accounting office in settling with the Concord Construction Company gave it credit for the value of the marble taken and used to complete the contract. This erroneous method of accounting cannot defeat the just claim of the appellee for the value of its property taken and used under a contract implied in fact.

The judgment is affirmed.