### WESTMORELAND v. PREFERRED ACC. INS. CO.

(Circuit Court, N. D. Georgia. June 5, 1896.)

ACCIDENT INSURANCE—CAUSE OF DEATH.

A policy was issued to one W., insuring him against death from bodily injury caused solely by external, violent, and accidental means, but stip-

ulating that there should be no liability for injury resulting from anything "accidentally or otherwise taken. * * * absorbed, or inhaled, * * * or resulting, either directly or indirectly, wholly or in part, from * * * medical or surgical treatment." In an action on the policy after W.'s death, it was alleged in the declaration that in order to relieve him from the pain of a surgical operation a physician administered chloroform to W. in a proper way, and that before he came under its influence, from it and some unknown cause combined, he suffocated and died; that death would not have resulted from the chloroform alone, but did result from the operation of the chloroform, acting in an unusual way, and the unknown cause. *Held,* that the declaration stated no cause of action.

Goodwin & Westmoreland, for plaintiff.
Payne & Tye, for defendant.

NEWMAN, District Judge. The plaintiff brings her suit on an accident insurance policy issued to her husband by the defendant company. The insured died on the 12th day of July, 1895. The case is now heard on a demurrer which is interposed on the ground that the declaration sets forth no cause of action. The case, as made by the declaration and the amendments thereto, is this: A policy of insurance, issued to the insured in his lifetime, and which was in force at the time of his death, granted him insurance, in the sum of $5,000, in consideration of certain annual premiums, against death from bodily injury caused solely by external, violent, and accidental means. By the terms of the policy it was stipulated that there should be no liability on the part of the company in case of death from certain enumerated causes,—among them, "injury, fatal or nonfatal, resulting from * * * anything accidentally or otherwise taken, administered, absorbed, or inhaled"; also, "death * * * resulting, either directly or indirectly, wholly or in part, from * * * medical or surgical treatment." The death of the insured occurred in this way: He was suffering from protruding piles, and it was necessary to replace the same. To relieve him from the pain this would cause, a competent physician proceeded, in a proper way, to administer chloroform in a proper quantity. Before the insured was under the influence of the chloroform, but from it and an unknown cause combined, he suffocated, became black in the face, gasped, and died. It is alleged that death would not have resulted from the action of the chloroform alone, but it was from the co-operation of the known cause—chloroform acting in an unusual and unexpected way—and an unknown cause that death resulted.

In the first place, waiving for the moment the exceptions in the policy, was the death the result of "bodily injury caused solely by external, violent, and accidental means"? While it is true that the policy will be given a construction favorable to the insured, so far as is consistent with the ordinary and usual meaning of the terms employed, still it is incumbent on the beneficiary bringing suit on the policy to show that the cause of death was such as would bring it within the language of the policy, so construed. Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360. Conceding that the external violence need not necessarily be force from with-

out, such as a fall or a blow, but would embrace death from such causes—if not expressly excepted in the policy—as the accidental inhalation of illuminating gas (Bayless v. Insurance Co., Fed. Cas. No. 1,138), or from a piece of beefsteak passing accidentally into the windpipe (Accident Co. v. Reigart [Ky.] 23 S. W. 191), still it would require quite a broad and liberal construction of this expression to extend it to the cause of death in his case. The language of the policy is, "Caused solely by external, violent, and accidental means"; and the statement in the declaration here is that death did not result solely from the known cause,—that is, the administration of chloroform,—but that "death was not caused by its administration, nor by said disease, but was caused by something to petitioner unknown, in conjunction with the unusual and unforeseen action of chloroform; and that said chloroform would not have produced death, except for the intervention and co-operation of said unknown cause." So that if even the action of the chloroform, operating in an unusual, unexpected, and unforeseen way, could be said to be external, violent, and accidental means, it was not the sole cause of death. But does the co-operation of an unknown cause with a known cause strengthen the plaintiff's case? Certainly it will not be contended that under a policy like this there can be a recovery where the case stands entirely on death from an unknown cause. It is incumbent on the plaintiff in such a suit to show that death resulted from "external, violent, and accidental means," and, in order to do this, show death in a particular way which comes within this language. The unknown cause might be one of the very things against which the company did not intend to insure. The policy is limited in its scope, and the cause of death must come within the limitation. It seems, therefore, that the combination of an unknown cause of death with a known cause, which was not the sole cause of death, and which of itself would not have had such result, could not make any stronger case of liability than either of the two considered separately.

It is hardly necessary, however, to discuss this case in the foregoing view, for the reason that the cause of death comes clearly within two of the exceptions in the policy, as to which it is stipulated there shall be no liability on the part of the company. It excepts injury, "fatal or nonfatal, resulting from * * * anything accidentally or otherwise taken, administered, absorbed, or inhaled." Now, so far as any facts are set out in the plaintiff's petition, and the amendments thereto, it seems that no other conclusion can be reached than that the death of the insured resulted from the inhalation of chloroform. While it is alleged that an unknown cause co-operated with the usual effect of the chloroform in producing death, no fact whatever is stated in support of this allegation. So far as the facts are shown, chloroform was administered in a proper way, and the insured suffocated, gasped, and died. Another exception in the policy is as to "death * * * resulting, either directly or indirectly, wholly or in part, from any of the following causes or conditions, or while so engaged or affected: * * * Medical or surgical treatment." Now, this expression, "medical or surgical

treatment," of course, must have such meaning as that it shall not be inconsistent with and defeat the general terms, scope, and purpose of the policy. It would not do, certainly, to say that if a man received a bodily injury which clearly came within the terms of the policy, and died while under medical or surgical treatment for the injury so received, he could not recover. Very clearly, it does not mean this; but it has some meaning, or it would not be in the policy. In this case the surgeon, desiring to alleviate pain while replacing the hemorrhoids, administered chloroform, and the patient—in part, at least, according to the plaintiff's petition—died from the chloroform. How could there be a case that comes more clearly within the language of this exception, in the sense in which it must have been used? It need not necessarily, it seems to me, be malpractice or carelessness on the part of the physician or surgeon; but certainly, to come within this exception, the medical or surgical treatment must be the proximate cause of death. If this is not true of this case, it seems difficult to imagine a case to which the exception would apply. So that considering the right to recover of the company under the general terms of the policy, or under either of the exceptions just referred to, I am clear that there is no liability. This case is controlled fully by the case of Bayless v. Insurance Co., *supra.* If there could be no recovery in that case (and I am not prepared to question its correctness), certainly there can be none in this. Indeed, the facts here do not make as strong a case as that. In taking unintentionally an overdose of opium, there is something of an accident, if not the kind of accident covered by the policy. Here there is nothing accidental either in the cause or means, whatever. The administration of the chloroform was in the usual, ordinary and proper manner. If, therefore, Judge Benedict was right in the Bayless Case, there is certainly no ground for recovery here. The demurrer must be sustained.