HUSBANDS v. INDIANA TRAVELERS' ACCIDENT ASSO-
CIATION.

[No. 24,060.   Filed December 1, 1921.   Rehearing denied May
13, 1924.]

1. INSURANCE.—*Accident Insurance.*—*"Accidental Means."*— *De-
fined.*—An accident insurance policy which makes the insurer
liable for death by "accidental means" covers only cases where
death results from bodily injury caused by the "accidental" ap-
plication of force, and not cases where an ordinary act is in-
tentionally done in the usual way, which produces an injury re-
sulting in death.   p. 589.

2. INSURANCE.—*Accident   Insurance.*—*"Accidental   Means."*—
*Not Supported by Finding.*—In an action on an accident policy
which provided that the insurer should be liable for death by
"accidental means," a finding that the wrenching and straining
of the body in shaking a furnace in the usual manner was
"accidental", and that the rupture of a weakened and diseased
blood-vessel in the lungs caused by said acts on the part of the
insured was caused by "accidental means" was an erroneous
conclusion of fact, and should be disregarded.   p. 593.

3. APPEAL.—*Review.*—*Special Finding.*—*Conclusions of Fact.*—
On appeal from a judgment in an action on accident insurance
policy, which provided that the insurer should be liable for
death by "accidental means", a finding that the wrenching and
straining of the body in shaking a furnace in the usual man-
ner was "accidental" and that the rupture of a diseased and
weakened blood-vessel of the lungs caused by said acts of the
insured was caused by "accidental means" were erroneous con-
clusions of the court and not findings of fact, and should be
disregarded.   p. 593.

From Marion Superior Court (A4,869); *W. W.
Thornton,* Judge.

Action by Laura J. Husbands against Indiana Trav-
elers' Accident Association.   From a judgment for de-
fendant, the plaintiff appealed to the Appellate Court.
(Transferred to the Supreme Court under §1394 Burns
1914.)   *Affirmed.*

*Charles A. Dryer,* for appellant.

*William S. McMaster* and *Elmer E. Stevenson,* for
appellee.

EWBANK, C. J.—The appellant sued the appellee on a membership certificate of her deceased husband in the appellee association, in which certificate, the appellant was named as beneficiary in case of the death of the insured. A section of the constitution of the appellee association provided for the payment to the beneficiary named in such certificate of the sum to be realized from an assessment on the members, not exceeding $5,000, "whenever a member shall through external, violent and accidental means, receive bodily injury (subject to exceptions not here involved), which shall, independently of all other causes, result in death within twenty-six weeks", etc.

The material allegations of the complaint, so far as they need to be considered, are that appellant's husband was a member of the appellee association, in good standing, and "that on the 25th day of October, 1918, and while said policy was in full force and effect, the said William M. Husbands received a bodily injury through external, violent and accidental means, to wit: that on (said date) he went to the basement or furnace room of his residence for the purpose of shaking down the ashes in the furnace and replenishing the same with coal; that he did shake down the ashes in said furnace with the shaker attached to said furnace with great force and violence * * * and his violent physical exertion in shaking the ashes down in the furnace caused the rupture of a blood vessel in his right lung, which injury then and there wholly disabled said William M. Husbands and caused his immediate death; that said William M. Husbands and the (appellee) each duly performed all the conditions of said policy to be by each of them performed", and that due notice was given and proof made.

Upon proper request, the court made a special finding of facts to the effect that appellant's husband was

insured as alleged, that he died on the date as stated, and that due notice was given and proper proof was made, and also the following facts: That on the day in question, at seven o'clock in the morning, after eating his breakfast, the insured went to the furnace room in the basement of his residence; that he descended a stairway from the kitchen; that the furnace had an iron shaker attached to it, which was an elbow shaped iron bar, and extended up two feet along the side of the furnace, six to twelve inches distant therefrom and was attached near the furnace door; that when in operation, this shaker had a movement to and from the furnace, and required much physical strength and force to move it back and forth in shaking down the ashes; that immediately the insured shook down the ashes by means of the shaker, "using more force and strength than was necessary when such furnaces were in good working order", and thereby caused ashes "to fill that part of the furnace room where it was located, some of the ashes settling on said William Husband's coat and vest"; that while so occupied, he "immediately" left the furnace room and ascended the stairway to the kitchen, and on some of the steps of the stairway some drops of blood fell from his mouth and nostrils; that when he reached the kitchen, blood was gushing rapidly from his mouth, nose, throat and lungs, his eyes were bulging, and, after being helped down on the floor, he died in the kitchen within fifteen minutes after he left the furnace room; that his face was white and the blood covered his face, hands and clothing; that the wrenching and straining of his body by the violent exertion in shaking the furnace was unintentional on his part and was unforeseen and unexpected by him; that at the time of the death of the insured and prior thereto, his right lung was diseased and the tissue thereof was degenerated, due to the ravages of tuberculosis, and the

walls of some of the blood-vessels therein were thereby weakened; and that said hemorrhage was from the rupture of a bloodvessel in his lungs caused by the said means, and did "independently of all other causes, result in his direct and immediate death." The special finding also recited the conclusions of law that said wrenching and straining of appellant's body by his exertion was "accidental", and that the rupture of the bloodvessel, as stated, "was caused by said * * * accidental means." But nothing was found as to the ashes having any effect upon the insured except to settle on his coat and vest, nor that he sustained any violent injury except the rupture of a bloodvessel, caused by his exertions in operating the shaker on the furnace.

The trial court stated conclusions of law on the facts found, to the effect that "the law is with the defendant and the plaintiff is not entitled to a judgment thereon", to which the appellant duly reserved exceptions, and which it has assigned as error.

The sole question for decision is whether the facts found make out a case of bodily injury "through external, violent and accidental means * * * which, independently of all other causes, resulted in death", within the meaning of the policy sued on.

There is a line of decisions as to the effect of insurance policies binding the insurer to pay indemnity in case of "accidental death" or of "death by

1. accident." And there is also a line of decisions holding that a contract to pay indemnity in case death results from a bodily injury caused by "external, violent and accidental means" binds the insurer to pay in case death is caused as the accidental result of means not intended to cause it, on the ground (as these decisions state) that an accidental result produced by intentional acts which are not manifestly dangerous and from which death would not ordinarily follow is

necessarily produced by accidental means.   See *Rowe* v. *United Com. Trav. Assn.* (1919), 186 Iowa 454, 172 N. W. 454, 4 A. L. R. 1235, and authorities cited.   But the courts of Indiana are committed, we think, to the doctrine that so far as death is concerned, such a policy covers only cases where death resulted from bodily injury caused by the "accidental" application of external violence, and not cases where an accustomed and habitual act, intentionally done in the usual way, produced a rupture of the tissues of vital organs of the body that had become weakened by disease, and thereby caused death.   After some previous decisions in which such an opinion had been outlined, the court, in sustaining a demurrer to a complaint on an accident policy, said: "The complaint sued on  *  *  *  provided that the appellee would pay the appellant $2,000 in the event her husband's death resulted directly and immediately from 'physical bodily injury inflicted by external, violent and accidental means.'   There would be no liability under the terms of the policy unless his death was the result of some physical bodily injury which was inflicted, not only by external and violent means, but was also accidentally received.  *  *  *  Assuming, without deciding, that the facts alleged sufficiently show that the decedent's death was the result of physical bodily injuries inflicted by external and violent means, there are no facts alleged showing that they were inflicted or at least received 'accidentally.'   An injury which is the result of an accident, as applied to the construction of insurance policies, is defined to be the result of some violence, casualty or *vis major* to the assured, without his design or consent or voluntary cooperation" (citing authorities).  *Newman* v. *Railway Officials, etc., Assn.* (1896), 15 Ind. App. 29, 32, 42 N. E. 650.

Afterward the court held that a man who had trav-

elled to a city in the mountains, and there climbed a hundred steps from the railway station to a hotel, carrying two hand-bags, and by reason of his physical condition and such unusual exertion so high above the sea level, fell dead from paralysis of the heart, did not come to his death "from physical bodily injury through external, violent and accidental means." In announcing its decision, the court reviewed many decisions of courts of this and other states, and said: "The following cases hold, as do the decisions in this state, that the result, though unexpected, is not an accident within the meaning of an accident insurance policy providing for liability on death of the insured by accidental means. The means or cause must be accidental. In these cases it is held that death resulting from voluntary physical exertion or from intentional acts on the part of the insured is not accidental and not within the meaning of a contract like the one under consideration (citing authorities). * * * If the result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means." *Schmid* v. *Indiana, etc., Accident Assn.* (1908), 42 Ind. App. 483, 497, 85 N. E. 1032. In reversing a judgment for the plaintiff in an action on such a policy, because of erroneous instructions given, while holding that the evidence was not insufficient to sustain the verdict, the court distinguished cases like the one at bar in the following language: "We are not here called on to consider a case where the result is one which follows from ordinary means, voluntarily employed, and in which the only element of unexpectedness lies in the fact that the pursuit of the means unexpectedly brings about a physical condition which makes disease possible." *Aetna Life Ins. Co.* v. *Fitzgerald* (1905), 165 Ind. 317, 321, 75 N. E. 262, 1 L. R. A. (N. S.) 422, 112 Am. St. 232, 6 Ann. Cas. 551. But neither

in that opinion nor in any other has the court disapproved or criticised the rule of law declared, as above set out.

This was a contract made in Indiana, between an Indiana corporation and a citizen of Indiana, and the law of Indiana then in force necessarily entered into and became a part of it. *Supreme Council, etc.,* v. *Logsdon* (1915), 183 Ind. 183, 187, 108 N. E. 587.

In two later cases, the question whether or not the conditions of such a policy were satisfied by an accidental result of intentional means was presented on appeal, and twice the court has distinguished the facts of the cases then under consideration from those coming within the rule laid down in the cases cited above, while expressing unqualified approval of the rule. In a case where the insured had been poisoned by "ptomaine" contained in some mushrooms which were voluntarily eaten by him, but without any intent on his part to eat the poison, the court said: "We quite agree with appellant's counsel when they say that the means must be accidental, and that a mere accidental result would not suffice under the language of this policy, but we are of the opinion that the unintentional taking of the poisonous substance contained in what decedent supposed to be edible mushrooms constituted an accidental means which caused the death." *United States Casualty Co.* v. *Griffis* (1916), 186 Ind. 126, 131, 114 N. E. 83.

And in the other case, where the holder of a policy issued in July, 1911, insuring him against "sunstroke * * * suffered through accidental means", sustained an injury because of riding to his work on a street car in a position where he was exposed to the direct rays of the sun in August, and it was held that the sunstroke was caused by "accidental means", the court said: "We are of the opinion that the better reasoning points out, and the weight of authority holds, the true test to be

that, if in the act which precedes the injury, though an intentional act, something unusual, unforeseen, and unexpected occurs which produces the injury, it is accidental; but, if in the act which precedes the injury, something usual, foreseen and expected occurs which produces the injury, it is not accidentally effected." *Elsey* v. *Fidelity, etc., Co.* (1918), 187 Ind. 447, 450, 120 N. E. 42. To the same effect are many decisions of courts of other jurisdictions. *Smith* v. *Travelers Insurance Co.* (1914), 219 Mass. 147, 106 N. E. 706, L. R. A. 1915B 872; *Shanberg* v. *Fidelity & Casualty Co.* (1907), 158 Fed. 1, 85 C. C. A. 343, 19 L. R. A. (N. S.) 1206; *Lehman* v. *Great Western Accident Assn.* (1911), 155 Iowa 737, 133 N. W. 752, 42 L. R. A. (N. S.) 562; *Scarr* v. *General Accident Assurance Corporation* (1904), 1 K. B. (Eng.) 387, 74 L. J. K. B. (N. S.) 237, 1 Am. & Eng. Ann. Cas. 787.

The courts of Indiana having been fully committed to the rule of law thus declared for many years before the policy in suit was issued, at the time it was issued, and continuously down to the time of the death of the insured, that rule must control in the interpretation of this insurance contract.

The recital in the special finding of the conclusions that the wrenching and straining of his body in shaking the furnace was "accidental" and that the rupture of the bloodvessel was caused by "accidental means", must be disregarded, except so far, if at all, as they are supported by the facts found. *Harrison Tp.* v. *Addison* (1911), 176 Ind. 389, 396, 96 N. E. 146.

And the facts found fail to show that the insured slipped or stumbled, or that anything fell upon or against him, or that anything whatever that was unforeseen or not intended happened to him of an "ex-

ternal violent" nature, or that he met with an "accident" of any kind, except that his exertion in shaking down the ashes in his furnace ruptured a blood-vessel weakened by disease, which he did not intend or expect thereby to rupture. But even if the result of his exertion in shaking the furnace be deemed an "accident", it was not shown to have been caused by "accidental means."

The judgment is affirmed.

Myers, J., absent.