## JAMES v. STATE LIFE INSURANCE COMPANY.

[No. 11,998.   Filed April 24, 1925.   Rehearing denied June 30, 1925.]

1. PLEADING.—*Construed in accordance with general scope and tenor to give effect to all its material allegations.*—A pleading must be construed in accordance with its general scope and tenor, and, if possible, so as to give full force and effect to all its material allegations.   p. 347.

2. PLEADING.—*Facts implied by fair and reasonable intendment given same force as if directly stated.*—In determining the sufficiency of a pleading, the court will consider not only the facts directly alleged, but, in addition thereto, such facts as are implied by fair and reasonable intendment will be given the same force as if directly stated.   p. 347.

3. INSURANCE.—*Complaint on accident insurance policy held to sufficiently allege that use of infected instrument in opening a pimple caused death of insured.*—A complaint on an accident policy which averred that a barber opened a pimple on insured's face with a blackhead eradicator, and, in doing so, caused an abrasion and puncture of the skin, that said blackhead eradicator was infected, and that, as a result of the infection on the eradicator, insured's face became infected and the infection spread throughout his system, causing his death, that the death of the insured was due to a streptococcic infec-

tion caused by the abrasure and puncture "made as aforesaid," sufficiently alleged that the use of the infected instrument caused the infection of insured's face. p. 348.

4.  INSURANCE.—*Death from infection caused by opening a pimple on insured's face with infected blackhead eradicator held to have resulted from "accidental means."*—The death of an insured resulting from infection caused by opening a pimple on insured's face with infected blackhead eradicator *held* to have resulted from a bodily injury sustained through "accidental means" within the meaning of an accident policy (*Husbands v. Indiana Travelers, etc., Accident Assn.*, 194 Ind. 586, distinguished). p. 356.

From Marion Circuit Court (33,279); *Harry O. Chamberlain*, Judge.

Action by Edna Josephine James against the State Life Insurance Company. From a judgment for defendant, the plaintiff appeals. *Reversed.* By the first division.

*Samuel D. Miller, Frank C. Dailey, William H. Thompson, Albert C. Rabb, Thomas D. Stevenson* and *Perry E. O'Neal*, for appellant.

*Charles F. Coffin* and *H. S. McMichael*, for appellee.

REMY, J.—Appellee, a domestic insurance company, issued a policy on the life of Perry Clement James, husband of appellant, in which appellant is named as beneficiary. In addition to an agreement to pay $10,000 in the event of the death of insured, the policy contains what is designated therein as an "extra indemnity" clause. By this provision of the contract, it is agreed that "in the event of the death of the insured, resulting from a bodily injury, sustained and effected directly through external, violent and accidental means, * * * exclusively and independently of all other causes, * * * the company will pay to the beneficiary, * * * in addition to the amount otherwise due under the policy, the sum of $5,000." The insured died November 24, 1922, while the policy was in full force

and effect, and appellant commenced this action against appellee to enforce payment of the $5,000 provided for by the extra indemnity clause of the contract. The complaint sets out the policy as an exhibit, and in addition to the usual allegations in a complaint in an action on an accident insurance policy to recover for the death of the insured, it is specially averred: "That on November 11, 1922, said Perry Clement James went into a barber shop * * * to be shaved, and that the barber, while shaving said insured, found a small pimple or boil on the left side of his chin, which said barber opened with a blackhead eradicator, causing an abrasion and puncturing the skin of said insured; that unknown to, or unsuspected by, said Perry Clement James or to said barber or to this plaintiff, said blackhead eradicator was infected, and accidentally infected, with streptococci; that as a result of said abrasion and puncture a streptococcic infection started in the face of said Perry Clement James, and spread throughout his system, and as a result he became poisoned and infected and died; that the death of said insured was due to a streptococcic infection caused by said abrasion and puncture of the skin made as aforesaid; and that said death was due to a cause insured against by the defendant in its policy under said 'extra indemnity' provision of said policy hereinbefore set forth, and was the result of an accident sustained and effected directly through external, violent and accidental means, exclusively and independently of all other causes, and that death resulted in less than two weeks after said accident occurred to said insured."

It is further averred in the complaint that "on December 9, 1922, and prior thereto, the plaintiff duly notified the defendant of the fact that the death of the insured had been caused by a risk insured against under the extra indemnity clause of the policy, and that it was

the intention of the plaintiff to, and she was, asserting liability against defendant on account thereof," and that, upon receipt of such notice, "defendant denied all liability to plaintiff on account of said extra indemnity provision, with full knowledge on the part of defendant that the plaintiff was asserting, and had continuously since the death of insured asserted, such liability."

A demurrer to the complaint for want of sufficient facts was sustained by the court, and, appellant refusing to plead further, judgment was rendered for appellee, from which this appeal is prosecuted.

Appellee's first objection to the complaint is that it "does not sufficiently allege that the infection on the instrument was the source of the infection which started on insured's face."

Judicial opinions contain many statements as to the form and language of a good complaint. However, we do well in this state to keep in mind the provision 1, 2. of the Code of Civil Procedure, that "the complaint shall contain  *  *  *.  2.  A statement of the facts constituting the cause 'of action, in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."  §359 Burns 1926, §338 R. S. 1881.  Does the complaint under consideration meet the requirements of the Code?  It is a familiar rule that a pleading must be construed in accordance with its general scope and tenor (*Miller* v. *Burket* [1892], 132 lnd. 469, 32 N. E. 309), and "will if possible be given such consideration as to give full force and effect to all of its material allegations, and such as will afford the pleader full relief for all injuries stated in his pleading." *Monnett* v. *Turpie* (1892), 132 Ind. 482, 485, 32 N. E. 328.  It is also a settled rule, in this state, that in determining the sufficiency of a pleading, the court will not only consider the facts directly alleged, but in addi-

tion thereto such facts as may be implied by fair and reasonable intendment, and such facts, so impliedly averred, will be given the same force as if directly stated. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 601, 610, 100 N. E. 675; *Fauvre Coal Co.* v. *Kushner* (1919), 188 Ind. 314, 123 N. E. 409; *Kahle* v. *Crown Oil Co.* (1913), 180 Ind. 131, 100 N. E. 681; *Rodebaugh* v. *Rodebaugh* (1923), 79 Ind. App. 324, 138 N. E. 263. After referring to, and discussing, a number of decisions and authorities, the Supreme Court in the able and exhaustive opinion in the DeArmey case, *supra,* said: "A consideration of the foregoing opinions compels the conclusion that it was never intended by this court to hold, that in determining the sufficiency of a pleading, on demurrer, resort may not be had to implication."

We must construe the complaint in the light of the Code and the rules above stated. Appellee's position as to the sufficiency of the complaint amounts to this, that construing the complaint according to its general scope and tenor, and taking into consideration not only the facts directly alleged, but also such facts as may be implied by fair and reasonable intendment, a person of common understanding would not understand from the complaint that the use by the barber of the infected instrument caused the death of the insured. We do not concur in that view. Let us examine the specific averments. It is averred that the barber opened the pimple "with a blackhead eradicator, causing an abrasion and puncturing the skin of the said insured; that unknown to or unsuspected by said Perry Clement James or to said barber or to this plaintiff, *said blackhead eradicator was infected and accidentally infected with streptococci.*" To a person of common understanding, that can mean nothing else than that the pimple was opened by the use of the instru-

ment, which, at the time it was used in opening the pimple, was, without the knowledge of the parties, accidentally infected with streptococci. It is next averred, "that as a result of the abrasion and puncture a streptococcic infection started in the face of Perry Clement James, and spread throughout the system, and as a result he became poisoned and infected and died." That means, if it means anything to a person of common understanding, that, as a result of the wound that had been referred to by preceding allegations of the complaint, the infection was started, and that the infection so brought about resulted in the insured's death. It is then averred, "that the *death* of said insured *was due to* a streptococcic *infection caused by the abrasion and puncture made as aforesaid.*" That averment clearly means that death was due to the infection caused by the wound made as above stated, that is by the infected instrument. The words "made as aforesaid" are especially significant, since it is previously stated in the complaint that the abrasion was made by the instrument used by the barber, which instrument, as averred, was "accidentally infected with streptococci." It is then averred that the death was due to a cause insured against in the special indemnity clause, and "was the result of an accident sustained and affected directly through external, violent and accidental means, exclusively and independently of all other causes." In construing the complaint as a whole, as we must, this general allegation, which is entirely consistent with the specific allegations, must be taken into consideration. If it be said that the use of an infected instrument in puncturing the skin would not always cause infection in the body of the person whose skin is punctured, the answer is that that would be a question of fact on the trial of the issue. We hold that it is sufficiently alleged in the complaint that the infection on the instrument

used was the source of the infection which started on the face of the insured.

It is further contended by appellee that even if the allegations of the complaint are sufficient to show that the infection on the insured's face had its source in the infection on the instrument used by the barber "the complaint is still fatally defective, for the further and major reason that no injury by accidental means is shown by the facts alleged, but, on the contrary, that the facts pleaded affirmatively disclose that the means were not accidental."

In discussing the question, appellee takes the position that the abrasion or puncture must be treated as separate and apart from the infection, and is "the real cause of the death"; and that, since the making of the abrasion or puncture was intentional and voluntary, there was nothing accidental in the means, and therefore there can be no liability on the extra indemnity clause of the policy.

We have not here a series of happenings. The face of the insured was not first punctured with an aseptic instrument, and then by other means the punctured part of the face infected. In the case under consideration, we have, as averred in the complaint, a puncture made by an infected instrument. But a single cause of death is averred. It is alleged that the death of the insured was due to a streptococcic infection caused by the abrasion and puncture of the skin with the blackhead eradicator which at the time was accidentally infected with the virulent bacteria.

No case has been passed upon by the courts of appeal of this state in which the facts are exactly parallel to those of the case at bar. Many such cases, however, have been considered by the courts of other jurisdictions.

In the case of *Bailey* v. *Interstate Casualty Co.*

(1896), 8 App. Div. 127, 40 N. Y. Supp. 513, 158 N.
Y. 723, 53 N. E. 1123, the New York Supreme Court
had before it an action on an accident insurance pol-
icy, the insuring clause of which was in language the
same as that of the policy in the case at bar. In that
case, the insured who was a physician administered to
himself certain medicine by the use of a hypodermic
needle. Immediately following the use of the needle,
blood poisoning started at the point where the skin was
punctured. At the close of the evidence, on the trial
of the cause, the court directed a verdict for defendant,
on the ground that the blood poisoning was not caused
by accidental means. In holding that the court erred
in directing the verdict, the Supreme Court of New
York used this language: "If, in the use of the needle,
an agency that otherwise would not have been in force,
and which was the efficient cause of the injuries, was
accidentally set in motion, I see no good reason why it
might not be found that the injuries were attributable
to the accident, as the sole and proximate cause."

A similar case is that of *Townsend* v. *Commercial,
etc., Assn.* (1921), 231 N. Y. 148, 131 N. E. 871, 17 A.
L. R. 1001. That is a case where the insured received
septic poisoning as a result of the use of an infected hy-
podermic needle, and death followed. The court, in
passing upon the case, held: "That the death of the
insured was due to accidental means is too well settled
by this court to require discussion."

The case of *Lewis* v. *Ocean Accident, etc., Corp.*
(1918), 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129,
is an action based upon a policy of accident insurance,
the insuring clause of which is in all material respects
identical with that of the policy in the case at bar. In
that case, the insured pricked a pimple on his face with
a scarf pin which, unknown to him, was at the time in-
fected with staphylococci. As a result of pricking the

pimple with the infected pin, the pimple became infected, and caused the death of the insured.    The Court of Appeals of New York, in reversing the judgment of the lower court which had held the complaint insufficient, said:    "We think there is testimony from which a jury might find that the pimple had been punctured by some instrument, and that the result of the puncture was an infection of the tissues.    If that is what happened there was an accident.    *    *    *    The same thing must be true of infection caused by the puncture of a pimple.    Unexpected consequences have resulted from an act which seemed trivial and innocent in the doing.    Of itself, the scratch or puncture was harmless.    Unexpectedly it drove destructive germs beneath the skin, and thereby became lethal."

In *Lewis* v. *Iowa State, etc., Assn.* (1918), 248 Fed. 602, and *Interstate Business, etc., Assn.* v. *Lewis* (1919), 257 Fed. 241, 168 C. C. A. 325, the facts are identical with the Lewis case, *supra,* and the Federal court in each of the two cases held, as did the New York Court of Appeals, that the death of the insured was caused by accidental means.

In the opinion in the case of *Lewis* v. *Iowa State, etc., Assn., supra,* in the United States District Court for the Southern District of Iowa, the court, among other things, said:    "It is not a case of breaking of the skin and having it afterwards infected.    *    *    *.    If it came from the scarf pin, it is apparent that the cocci were on the scarf pin.    *    *    *.    If the injury resulted from the pin alone, and there was no proof that the pin was infected, the accidental result would not be covered by this policy; but the deceased clearly used something which he did not intend to use.    He used, not only the pin, but he used an infected pin—a poisoned pin.    *    *    *    To my mind the means were clearly accidental."

In the opinion in the case of *Interstate Business, etc., Assn.* v. *Lewis, supra,* the judge delivering the opinion for the United States Circuit Court of Appeals for the Eighth District said: "Counsel for defendant further contends that, if the deceased selected the scarf pin in ignorance of its infected condition to use in making a voluntary puncture of the skin, this fact would not make the means of death accidental. To sustain this proposition, a distinction is sought to be drawn between the intentional selection of an instrument in ignorance of some peculiar property which it possessed, and the inadvertent selection of an instrument known to be inappropriate. The last-named situation it is admitted might be an accidental means; but in inadvertently selecting an instrument known to be inappropriate there is no intention of selecting that instrument; neither was there in the case at bar, any intention to select an infected instrument. Such refinement may be indulged in as a matter of intellectual pleasure, but in the practical adjustment of the rights of parties to an insurance contract, it ought not to be given much weight."

Another similar case is that of *Horton* v. *Travelers Ins. Co.* (1920), 45 Cal. App. 462, 187 Pac. 1070. In that case, insured voluntarily submitted to a dental operation. By reason of the unexpected presence of poisonous matter on the surgical instrument used by the dentist, blood poisoning and death resulted. As in the case at bar, a demurrer to the complaint was sustained, the trial court holding that the injury was not caused by accidental means. As in the instant case, the only alleged error was the action of the court in sustaining the demurrer. On appeal, the court in reversing the judgment held, that "the use of the instruments with the germs thereon was external, violent and accidental means." In discussing the question, the

court in its opinion said: "Respondent contends that there can be no recovery where the injury or death is the result of the voluntary act of the insured, although such result may be entirely unexpected and undesigned. Without doubt, there can be no recovery if the insured does a voluntary act the natural, usual, and to-be-expected result of which is to bring injury upon himself. An injury or death so occurring is not produced by 'accidental means.' * * * Where, as here, the policy does not insure against accidental death or accidental injuries, but against death or injuries effected by accidental means, it is not enough that the death or injury should be unexpected or unforeseen; there must be something of an unexpected or unforeseen character in the means through which the injury was sustained or the death produced. * * * But, though this unquestionably is the law, it is not applicable to the facts as alleged in the complaint now under consideration. Here, according to the complaint, the element of unexpectedness was in the preceding act or means which led to the death, namely, the use of instruments with virulent germs thereon, the presence of the germs being wholly unsuspected. * * *"

Although a case with identical facts as the case at bar has not been before the courts of appeal of this state, there have been considered and determined certain cases in which the same principle was involved. One of these is *United States Casualty Co.* v. *Griffis* (1916), 186 Ind. 126, 114 N. E. 83, L. R. A. 1917F 481. The insured in that case intentionally ate mushrooms which, unknown to him, were infected with ptomaine, and died as a result. The Supreme Court held that "the unintentional taking of the ptomaine in what insured supposed to be edible mushrooms constituted an accidental means which caused the death." The insured intended to, and did, eat mushrooms, but he did not

intend to take the bacteria that accompanied the mushrooms. So, in the case at bar, insured intended that the skin of his face should be pricked with the barber's instrument, but he did not intend that the instrument should be infected with the deadly bacteria.

Another case in which the controlling principle is not different from that of the instant case is *Elsey* v. *Fidelity, etc., Co.* (1918), 187 Ind. 447, 120 N. E. 42, L. R. A. 1918F 646. Elsey, the insured, was riding in an open street car, in the city of Indianapolis, going in a northeast direction along Massachusetts avenue from the postoffice to his place of business on East Michigan street. The street car stopped at East Michigan street to permit Elsey to alight. Coincident with the stopping of the car, Elsey, because of his position in the car, was subjected to the direct and indirect rays of the sun, and suffered a sunstroke. Elsey held an accident policy issued to him by the Fidelity & Casualty Company, which policy indemnified against "sunstroke suffered through accidental means." The company defended on the ground, as claimed, that the sunstroke was not suffered through accidental means, because insured was performing the ordinary and usual duties of his business in the ordinary and usual manner at the time he suffered the sunstroke. The Supreme Court, reversing the judgment of the trial court, held that the sunstroke was suffered through accidental means. In the Elsey case, the insured intended to go as a passenger on the street car to East Michigan street; but he did not anticipate, and could not reasonably have anticipated, that he would, at the point of destination, encounter the combination of forces which produced the sunstroke, to wit: The condition of the atmosphere on that hot summer day, the direct and indirect rays of the sun as he passed from the shade just as the car was stopping, and the cessation of the fanning caused by the movement of

the car.  So, in the case under consideration, insured intended that the barber should use the instrument in removing the blackhead, but he did not anticipate, and could not reasonably have anticipated, that the instrument was infected with streptococci.

The case of *Husbands* v. *Indiana, etc., Accident Assn.* (1921), 194 Ind. 586, 133 N. E. 130, to which our attention is called, is readily distinguished from the instant case.  In that case, the insured, merely as the result of his own physical exertion in shaking down the ashes in a furnace, ruptured a blood vessel.  The rupture proved fatal.  The Supreme Court held that in as much as it was not shown that the insured slipped or stumbled, or that anything happened to produce the injury except his physical exertion, which was by him intended, the means was not accidental.  That is very different from the case at bar, where the fatal injury of the insured was the result of the use of an infected instrument, the infected condition of which was, at the time, unknown to, and unsuspected by, insured.

It is well settled, not only in this, but in other jurisdictions, that the fact "that a death is the result of an accident, or is unnatural, imports an external and violent agency as the cause."  *United States Casualty Co.* v. *Griffis, supra; Paul* v. *Travelers Ins. Co.* (1889), 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. 758.

We conclude that the facts averred in the complaint show that the death of insured was the result of a bodily injury sustained and effected through external, 4. violent and accidental means, within the meaning of the extra indemnity clause of the policy sued on, and that the action of the court in sustaining the demurrer was error.

Judgment reversed, with instructions to the trial court to overrule the demurrer,

### DISSENTING OPINION.

ENLOE, J.—I find myself unable to concur in the majority opinion which holds the complaint herein sufficient. The complaint alleges the making of the wound, the opening of the pimple with an "infected instrument," "a blackhead eradicator," and that, as a result of the making of such wound, an infection started; but the complaint does not allege that the germs which caused said infection were implanted in said wound by said "eradicator" which was so used. For aught that is averred in said complaint, said "germs" may have gotten into said wound at a later time, or may have been implanted there by another instrumentality. To hold this complaint good, we must say that the use of an "infected instrument," in making a wound, will, in all cases, cause an infection. In my opinion, the complaint was insufficient, and the demurrer was rightly sustained.