## ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA v. SHANE.

### No. 9510.

Circuit Court of Appeals, Eighth Circuit.

Feb. 27, 1933.

Byron S. Payne, of Pierre, S. D. (John Sutherland and Otto B. Linstad, both of Pierre, S. D., on the brief), for appellant.

56

H. F. Fellows, of Rapid City, S. D., for appellee.

Before STONE, VAN VALKEN-BURGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment entered on the 15th of December, 1931, modified on February 25, 1932, granting recovery to the appellee upon certain certificates of accident insurance held by her son in the appellant corporation, in which certificates she was the beneficiary.

A stipulation waiving a jury was filed, and the case tried to the court; findings were made, and conclusions of law as a basis for the judgment.

The findings of the court as originally made, so far as material to the present controversy, are set out in the margin.[1]

Judgment was entered December 15, 1931. Thereafter a statement of the case was made and signed January 14, 1932. February 10, 1932, various motions were filed by the defendant and heard by the court on February 25, 1932. By these motions it was sought, among other things, to strike out findings IV, XI and XVII, to set aside the judgment, and to enter judgment for defendant, to have made two additional findings, and to modify the judgment as to method of payment.

The court granted the motion for additional findings. They are set out in the margin as A and B.[2] The court also granted the motion in one respect to modify the judgment, and denied the other motions. The present appeal followed.

The contentions of the appellant are: (1) That on the undisputed facts, as disclos-

---

[1] Findings of Fact and Conclusions of Law of the District Court.

"The Court finds: * * *

"IV. That on the 8th day of May, 1931, the said Ford Shane was killed by an accident through external, violent and accidental means, termed an accident, and that his death was occasioned by said accident alone and independent of all other causes in the manner herein set forth. * * *

"VII. That on May 8, 1931, the said deceased, Ford Shane, went to the offices of Drs. Doyle & Janis at Rapid City, South Dakota, where a clinic was being conducted for the purpose of securing a physical examination of the posterior urethra; that Dr. A. J. Janis, the person who was to make said examination did, in order only that such examination might be conducted with as little discomfort to the patient as possible and in keeping with approved surgical and medical practice, administered butyn, a drug having the same character and qualities as novocaine, as a local anaesthetic.

"VIII. That the said A. J. Janis was at such time a duly and regularly licensed physician in the State of South Dakota, and a physician and surgeon duly graduated in medicine and surgery from the University of Michigan, and a regularly practicing physician and surgeon in Rapid City, South Dakota, and skilled in his profession.

"IX. That immediately upon the administration of the said anaesthetic the said Ford Shane went into convulsions and died within a few minutes; that such death occurred before the said examination of the urethra could be made.

"X. That the said anaesthetic so administered was the usual, ordinary and proper amount for such purposes and in such cases, and that such anaesthetic was of the usual, ordinary, and proper strength; and that it was properly administered.

"XI. That at the time of the administration of the said anaesthetic and of the said death, the deceased was in sound physical condition, and that insured's physical condition did not contribute to his death. That no medical or surgical treatment was given to the deceased and that the said examination did not necessarily include the administration of such anaesthetic.

"XII. That the said local anaesthetic was not administered at the request of the deceased, and that the deceased did not know that such anaesthetic was going to be administered.

"XIII. That at the time of the administration of said local anaesthetic the deceased had present an idiosyncrasy to butyn, which said idiosyncrasy was

not discoverable by any test or examination and is and was so exceedingly rare that it is not taken into account as a danger in administering the said anaesthetic.

"XIV. That the said idiosyncrasy for the said anaesthetic caused it to act in an unusual and unexpected manner, and in a manner which does not ordinarily follow and cannot be reasonably anticipated from the use thereof, and in a manner which was not intended or designed, and in a manner which was not the natural and probable consequence of such administration of butyn; that death does not ordinarily follow and cannot be reasonably anticipated from such use of said drug; and that said death resulted on account of the said idiosyncrasy. That the sole and proximate cause of the said death was such administration of said butyn to the body of deceased when deceased has such unknown idiosyncrasy. * * *

"XVII. That the death of said Ford Shane did not result from medical, mechanical or surgical treatment which was being administered to him at his request nor did it result from the intentional taking of medicine or drugs on the part of said Ford Shane as contemplated by the terms of the said policy or certificate of insurance.

"XVIII. That the natural and probable effect of butyn administered in the manner and in the quantity used is to induce local anaesthesia without injury to the patient; that the deceased's idiosyncrasy or susceptibility to said anaesthetic was unforeseen, unknown and unexpected.

"Wherefore, the Court concludes as a matter of law that the death of the insured, Ford Shane, was the result of external, violent and accidental means termed an accident within the meaning and contemplation of said policy or certificate of insurance; and that said death was occasioned by the said accident alone and independent of all other causes."

[2] A.

"That the policy of insurance on the life of said Ford Shane set out in the complaint contained the following provision, to-wit:

"'The Order of United Commercial Travelers of America, Columbus, Ohio. An Association incorporated under the laws of the state of Ohio, hereby certifies that Ford Shane, a member of The Order of United Commercial Travelers of America, in consideration of the statements contained in his application for insurance and the application fee paid by him, is hereby accepted as an Insured Member of said Order under "Class A," beginning at twelve (12) o'clock noon, Standard time, on the day this

ed by the findings, the death was not the result of a bodily injury effected through external, violent, and accidental means, (2) but was the result of a medical, mechanical, and surgical treatment, and the intentional taking of medicine and drugs, and that therefore there was no liability on the policy.

It is further contended by appellant that the judgment was erroneous, in that it covered not only the amount payable at once, but also certain installments that were not due when the action was commenced. In the view we take of the case, it will not be necessary to consider the last contention.

Appellee contends that there was an accident in the means employed, and argues that there was no intention on the part of the physician to inject the drug into insured's body containing the idiosyncrasy, and that it was the unknown and unexpected presence of the idiosyncrasy which constituted the accident contained in and being a part of the means employed.

It is also contended by the appellee that, although insured's death resulted while under medical treatment, it did not result from medical treatment, and that the giving of the anæsthetic was no part of the examination or of the treatment; that the language of the constitution and by-laws of the appellant as to the taking of medicine and drugs means that the insured must have willfully and knowingly taken medicine and drugs with the intention to effect a certain result; and that this was not the situation in the case at bar, because the insured did not know the drug that was to be applied and had not requested it.

The contentions of appellee find support in findings IV and XVII of the trial court.

The first question which challenges our attention is whether these findings (IV and XVII) can be reviewed on this appeal.

It is provided by statute, where a jury is waived and the case tried to the court, that "the finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury." 28 USCA § 773.

This statutory provision does not prevent a review of questions of law; and, where the primary facts are either stipulated or established by uncontradicted evidence, and the court, solely from these primary facts, finds an ultimate fact upon which the judgment rests, such finding is in the nature of a conclusion of law, and as such is reviewable on appeal to determine whether the primary facts support it.

In St. Paul Abstract Co. v. Commissioner of Internal Revenue, 32 F.(2d) 225, this court, speaking through Judge Stone, said, at page 226: "Where the facts are undisputed there remains no question of fact in the usual sense of the term, but where the primary facts are agreed it is a question of law whether such facts justify the finding of an ultimate fact required by the statute. Botany Worsted Mills v. U. S., 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379. * * * The ultimate fact required by this statute to be found is whether the taxpayer is a personal service corporation within the meaning of that statute. This requires a construction of the meaning of the statute and its application to a stipulated set of primary facts. We

certificate is dated, and is entitled to all the rights and benefits which may be provided for such "Class A" Insured Members in and by the Constitution of said Order in force and effect at the time any accident occurs subsequent to said time and date.

" 'This Certificate, the Constitution, By-laws and Articles of Incorporation of said Order, together with the application for insurance signed by said Insured Member, shall constitute the contract between said Order and said Insured Member and shall govern the payment of benefits, and any changes, additions or amendments to said Constitution, By-Laws or Articles of Incorporation, hereafter duly made, shall bind said Order and said Insured Member and his beneficiary or beneficiaries, and shall govern and control the contract in all respects.' "

B.

"That the By-Laws of said defendant corporation at the time of the death of the said Ford Shane, in Sections 4 and 7 thereof, contained the following provisions which formed a part of the contract of insurance, to-wit:

" 'Class A. Insured members shall be indemnified, in accordance with the terms hereinafter set out in this Article, against the results of bodily injury hereinafter mentioned, effected through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident alone and independent of all other causes. * * *

" 'Benefits. Class A.

" 'Maximum benefits under Class A. Insurance Certificates shall be as follows:

" 'Item (12) For death, $6300.00

" 'Five Thousand ($5000.00) of which shall be paid within ninety (90) days from the receipt by the Supreme Executive Committee of satisfactory final proofs of death and thirteen hundred ($1300.00) dollars in weekly installments of twenty-five ($25.00) dollars each, beginning within ninety (90) days from the receipt of such final proofs. * * *

" 'Exceptions.

" 'Sec. 7. * * * This order shall not be liable to any person for any benefit for any death, disability or loss of time resulting from * * * medical, mechanical, or surgical treatment (except where the surgical treatment is made necessary by the accident) ; nor from the intentional taking of medicine or drugs * * * Nor shall the Order be liable to any person for any benefits for any death, disability or loss of time, unless there is some external visible mark of the accident upon the body (the dead body not being such a mark except in case of drowning).' "

think that we must examine the stipulated facts and determine whether they justify the conclusion that this petitioner is not a personal service corporation within the meaning of the statute."

This rule is well established in cases appealed from the Court of Claims to the Supreme Court. Act of March 3, 1887, 28 US CA § 764. In Hathaway & Co. v. United States, 249 U. S. 460, the court in its opinion said, at page 463, 39 S. Ct. 346, 347, 63 L. Ed. 707: "The Court of Claims found: 'There was no unreasonable delay on the part of the government in approving the contract.' This finding, like one of reasonable value (Talbert v. United States, 155 U. S. 45, 46, 15 S. Ct. 4, 39 L. Ed. 64), is a finding of an ultimate fact by which this court is bound, unless it appears that the finding was made without supporting evidence (Cramp & Sons Co. v. United States, 239 U. S. 221, 232, 36 S. Ct. 70, 60 L. Ed. 238; Stone v. United States, 164 U. S. 380, 17 S. Ct. 71, 41 L. Ed. 477; United States v. Clark, 96 U. S. 37, 24 L. Ed. 696), or is inconsistent with other facts found (United States v. Berdan Firearms Co., 156 U. S. 552, 573, 15 S. Ct. 420, 39 L. Ed. 530)." See, also, United States v. Pugh, 99 U. S. 265, 25 L. Ed. 322; United States v. Buffalo Pitts Co., 234 U. S. 228, 34 S. Ct. 840, 58 L. Ed. 1290.

The same rule may also be applicable on the question of infringement in patent cases. Singer Co. v. Cramer, 192 U. S. 265, 24 S. Ct. 291, 48 L. Ed. 437; Stilz v. United States, 269 U. S. 144, 46 S. Ct. 37, 70 L. Ed. 202; Chicago & A. Ry. Co. v. Pressed Steel Car Co. (C. C. A.) 243 F. 883.

We think the rule above stated is applicable to the findings IV and XVII in the case at bar, and that such findings are reviewable.

This requires a consideration of the certificate or policy of insurance and the primary facts as set forth in the findings of the trial court.

The provisions of the certificate, which included the constitution and by-laws of the order by reference, are found in the findings A and B. They entered into and were a part of the contract between the order and the insured.

It is the duty of the courts to construe a contract, but they may not alter its terms or make a new contract for the parties.

The facts regarding the death of the insured are set forth in the findings of primary facts by the court, and are not in dispute. Do these findings of primary facts support the conclusions of ultimate facts embodied in the findings IV and XVII?

As to finding IV, we think that in the case at bar the distinction between an accidental result and the result of an accidental cause or means was overlooked. That distinction was clearly recognized in the case of U. S. Mutual Acc. Ass'n v. Barry, 131 U. S. 100, where the court said, at page 121, 9 S. Ct. 755, 759, 33 L. Ed. 60: "If in the act which precedes the injury something unforeseen, unexpected, unusual, occurs, which produces the injury, then the injury has resulted * * * through accidental means."

The distinction was also pointed out by this court in the case of Lincoln Nat. Life Ins. Co. v. Erickson, 42 F.(2d) 997, and a number of cases were cited which recognize the distinction.

The Erickson Case involved a streptococcic infection, which plaintiff contended was connected with a slight abrasion of the skin on the face of insured. This court in its opinion said, at page 1000:

"And at this point it may be proper to note the distinction between an accidental result and the result of an accidental cause or means. Under policies worded as the one in the present case the element of accident must be found to exist in that which produces the bodily injury, i. e., in the means or cause rather than in the result. The distinction is important and is recognized in many well-considered cases. * * *

"In the case at bar the deceased was insured, not against accidental results of intended means, but against death resulting from a bodily injury effected directly through external, violent, and accidental means. It may be proper enough, loosely to speak of the death as an accidental one; but the evidence, in our judgment, fails to show a death resulting from a bodily injury effected directly by accidental means."

Counsel for plaintiff cites the Barry Case, supra, as supporting their contention. We think the true construction of the Barry Case is that given by Judge Denison in the case of Pope v. Prudential Ins. Co. of America (C. C. A.) 29 F.(2d) 185, 186, wherein he says, referring to the Barry Case: "The evidence recited, what the court had said in its charge to the jury, and the comments of the Supreme Court, all indicate that the approved theory of recovery was that there had been some slip or mishap attending Barry's act in jumping to the ground, whereby his intended act was, as to the manner of its ex-

ccution, transformed into an unintended one."

In the case at bar, the means employed was the administration of the drug butyn. There was nothing in the act of administering the drug which was unintended or unexpected. There is no showing that the drug did not produce the intended result. But another result was produced owing to the idiosyncrasy of the patient. Counsel for plaintiff suggests that this idiosyncrasy was part of the "means" employed. We cannot agree with this suggestion. The administering of the butyn was the means, the causative agency, employed by the plaintiff through his agent, the physician; the idiosyncrasy was but the condition which existed, and was inherent in the patient. There were no accidental means, but simply an unexpected or accidental result. The administration of the drug did not cause the idiosyncrasy, and, if the bodily injury which resulted in death was produced by the idiosyncrasy as a cause or means, then the administration of the drug was not the sole cause, and there would be no liability under the policy.

Furthermore, in such case the idiosyncrasy would not be either a violent or an external means.

As supporting these views may be mentioned the following cases, in addition to those cited in the Erickson Case. Husbands v. Ind. Travelers' Acc. Ass'n, 194 Ind. 586, 133 N. E. 130, 35 A. L. R. 1184; Hesse v. Travelers' Ins. Co., 299 Pa. 125, 149 A. 96; Salinger v. Fid. & Cas. Co. of N. Y., 178 Ky. 369, 198 S. W. 1163, L. R. A. 1918C, 101; Kendall v. Travelers' Protective Ass'n, 87 Or. 179, 169 P. 751; Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S. W. 907, 908, 39 A. L. R. 56.

In the case last cited the court in its opinion said:

"Before plaintiff can recover, she must offer substantial evidence tending to show that her husband's death resulted 'from bodily injuries, * * * through external, violent, and accidental means.' No question is raised as to the external and violent means. The sole question is what is meant by 'accidental means.' * * *

"There are two clearly defined lines of cases on this question. One holds that, where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip, or mishap occurs in doing the act itself, the ensuing injury or death is not caused through acci-

dental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected, or unforeseen.

"The other line of cases holds that, where injury or death is the unusual, unexpected, or unforeseen result of an intentional act, such injury or death is by accidental means, even though there is no proof of mishap, mischance, slip, or anything out of the ordinary in the act or event which caused such injury or death."

After an exhaustive discussion of the authorities, the court followed the first line of cases.

We are aware that there are authorities supporting views contrary to those we have expressed. Among them are Mutual Life Ins. Co. v. Dodge (C. C. A.) 11 F.(2d) 486, 59 A. L. R. 1290; Ætna Life Ins. Co. v. Brand (C. C. A.) 265 F. 6, 13 A. L. R. 657; Taylor v. N. Y. Life Ins. Co., 176 Minn. 171, 222 N. W. 912, 60 A. L. R. 959; Strommen v. Prudential Ins. Co. (Minn.) 245 N. W. 632.

The decision in the case of Western Commercial Trav. Ass'n v. Smith, 85 F. 401, 40 L. R. A. 653 (C. C. A. 8), cited by appellee, when regard is had to the facts involved, is not opposed to the foregoing; and the language in the opinion must be read in the light of the facts, and confined thereto.

Finding XVII of the trial court is also, we think, not supported by the findings of the primary facts.

The drug butyn was concededly administered to the insured by a physician of good standing. It was administered for the lessening of pain to the patient during a preliminary examination of the posterior urethra. It was a drug commonly used by physicians for such purpose. The usual and proper amount of the drug was used, and it was properly administered. We think the administering of the drug must be placed in the category of medical or surgical treatment.

The meaning of the word "treatment" as used in the policy must be given a reasonable scope. It includes not merely the actual operation in a surgical case or the giving of a prescription in a nonsurgical case, but also the preliminary examination, including sometimes an exploratory operation or exploratory examination. The treatment may, and generally does, include three stages: Preliminary, main, and final. Whatever is usually done to the patient or administered to him by a skilled physician or surgeon in

any one of these stages is properly included under the term "treatment," even though it may not be an indispensable prerequisite.

In support of these views may be cited 1 C. J. p. 454, § 131; Westmoreland v. Preferred Acc. Ins. Co. (C. C.) 75 F. 244; Flint v. Travelers' Ins. Co. (Tex. Civ. App.) 43 S. W. 1079; International Travelers' Ass'n v. Yates (Tex. Com. App.) 29 S. W.(2d) 980.

If the administering of the drug in the case at bar did not constitute medical or surgical treatment, we should be at a loss how to classify such act.

For the reasons above stated, we think the judgment should be reversed. It is so ordered.

VAN VALKENBURGH, Circuit Judge (concurring).

I fully concur in the foregoing opinion of Judge BOOTH. In my opinion, finding VII of the trial court conclusively stamps the examination of Dr. Janis as surgical treatment within the meaning of the policy exception.