## BEVERIDGE,
*Appellant,*

*v.*

## HARTFORD ACCIDENT AND INDEMNITY COMPANY,
*Respondent.*

(87-1514-J-3; CA A48155)

770 P2d 943

Robert H. Grant, Medford, argued the cause and filed the briefs for appellant.

I. Franklin Hunsaker III, Portland, argued the cause for respondent. With him on the brief were Lori R. Metz, Douglas G. Houser and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiff appeals from a summary judgment for the defendant insurer in this action on an accidental injury and death policy. The parties presented the case to the trial court on stipulated facts. We affirm.

The deceased insured, James Beveridge, was afflicted with multiple myeloma and underwent radiation and chemotherapy. He developed pulmonary problems, which appeared to be at least partially infectious in nature, and he was treated with antibiotics. He was hospitalized hen the problems worsened. One of the attending physicians, Dr. Karchmer, stated[1] that "we were concerned about the risk of an opportunistic infection considering [Beveridge's] underlying myeloma and the fact that he had been on high dose steroids." Karchmer noted that the physicians had explained to Beveridge and his family "the concern about the possibility of an unusual infection that would require different types of antibiotics." The doctors decided to perform a bronchoscopy to obtain "adequate specimens and to look at evidence for pneumocystis which," Karchmer said, "would obviously change our treatment approach." The bronchoscopy caused bronchial bleeding and cardiopulmonary arrest, and Beveridge died as a result.

As formulated by the parties, the issue is whether Beveridge's death comes within the exclusion in the policy for losses resulting from "sickness or disease or medical or surgical treatment therefor." Plaintiff contends that the word "treatment" is ambiguous and, therefore, that there is a question of fact as to whether the word was intended to apply to diagnostic procedures such as a bronchoscopy. Defendant argues that the "overwhelming weight of judicial authority," including the Supreme Court's decision in *Zeh v. National Hospital Ass'n,* 233 Or 221, 377 P2d 852 (1963), holds that the "phrase 'medical or surgical treatment' in an insurance contract includes diagnostic procedures," at least when they are aimed at determining whether an ongoing course of treatment should be continued or revised. Therefore, defendant argues, the exclusion applied to the bronchoscopy as a matter of law and there was no ambiguity to be resolved by a factfinder.

---

[1] Karchmer's statements appear in the hospital death summary, which he prepared. The parties stipulated that, if called as a witness, Karchmer would testify in accordance with the summary.

We agree with defendant. Neither the issue nor the holding in *Zeh v. National Hospital Ass'n, supra,* is precisely on point. Nevertheless, an issue like the one here was addressed in language which the court in *Zeh* quoted with approval from *Provident Life and Accident Insurance Co. v. Hutson,* 305 SW 837, 839-40 (Tex 1957):

> " 'The meaning of the word "treatment" as used in the policy must be given a reasonable scope. It includes not merely the actual operation in a surgical case or the giving of a prescription in a nonsurgical case, but also the preliminary examination, including sometimes an exploratory operation or an exploratory examination. The treatment may, and generally does, include three stages: Preliminary, main, and final. Whatever is usually done to the patient or administered to him by a skilled physician or surgeon in any one of these stages is properly included under the term "treatment," even though it may not be an indispensable prerequisite.' *Order of United Commercial Travelers v. Shane,* 8 Cir., 64 F.2d 55, 59. The opinion in this case, quoted from, cites and relies upon *International Travelers Association v. Yates,* 29 S.W. 2d 980, by the Texas Commission of Appeals and *Flint v. Travelers Insurance Co.,* Tex. Civ. App., 43 S.W. 1079. We believe that the term 'medical and surgical treatment' has the legal significance and meaning, as is set out in the opinion quoted above. Within such legal meaning must be included not only what the physician or surgeon views as treatment, that is, things done in an effort to relieve or cure a physical disease or infirmity, but also all of the things performed by a doctor or a surgeon on the body of the patient in the diagnosis of or in preparation for cure." 233 Or at 232.

Whether that quotation in *Zeh* is *dictum* or is controlling, we agree with it, at least as it applies to the facts here. There may be circumstances in which the word "treatment" in an insurance contract does not extend to diagnostic procedures that are not preceded or followed by therapeutic measures. Here, however, the bronchoscopy was performed as part of and to help determine the course of an ongoing intensive treatment program.[2] We hold, as a matter of law, that the bronchoscopy came within the policy's "treatment" exclusion and that the trial court correctly granted summary judgment.

---

[2] Under plaintiff's rationale, "diagnostic" adjuncts, such as regular temperature readings and blood tests, could not be considered as part of the "treatment" for an acute infection. The line that plaintiff would have us draw is unacceptable.

Affirmed.